## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **OLGA MARTINEZ TORRES AND LINDA DAVIS, on behalf of themselves and all others similarly situated,** | **Civil Action No.:** _____ |
| **Plaintiffs,** | |
| **vs.** | |
| **AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE AND JOHN/JANE DOES 1-5** | **CLASS ACTION** |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Olga Martinez Torres and Linda Davis, by and through their attorneys, on behalf of themselves and all others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of their counsel as to all other allegations, allege the following.

## INTRODUCTION

1.      This is a class action against Defendant American Airlines, Inc. ("American") concerning the failure to pay benefits under certain of its defined benefit retirement plans that are actuarially equivalent to a single life annuity for the life of the plan participant, as required by Section 205 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1055.  By not offering actuarially equivalent pension benefits, American is causing retirees to lose part of their vested retirement benefits in violation of ERISA § 203(a), 29 U.S.C. § 1053(a).

2.      Under American's defined benefit pension plans, workers accrue retirement benefits in the form of a single life annuity ("SLA"), a payment stream that starts when they retire and ends when they die.  The amount of the SLA is based on their wages and years of service with American, not current life expectancies or interest rates.

3.      ERISA requires that pension plans offer married retirees the option of receiving a payment stream for their life and their spouse's life after the retiree dies (a "joint and survivor annuity").  ERISA § 205(d), 29 U.S.C. § 1055.  A joint and survivor annuity is expressed as a percentage of the benefit paid during the retiree's life.  For example, a 50% joint and survivor annuity provides a surviving spouse with 50% of the amount that was paid during the retiree's life.  American offers 50%, 66 and 2/3%, 75% and 100% joint and survivor annuities.

4.      When retirees choose a joint and survivor annuity, they receive lower monthly pension payments than they would if they chose a SLA in exchange for their spouses receiving payments after their deaths.  ERISA requires that joint and survivor annuities be "actuarially equivalent" to an SLA, ERISA §§ 205(d)(1)(B) and (2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B) and (2)(A)(ii), meaning that the present value of the payment streams should be the same.

5.      Actuarial assumptions are applied to calculate the present value of the future payments under a joint and survivor annuity.  The present values of the joint and survivor annuity must equal the present value of  the SLA in order to establish actuarial equivalence between the two forms of benefit payment streams

6.      Mortality rates have improved over time with advances in medicine and better collective lifestyle habits. People who are retiring now are expected to live longer than those who retired in previous generations.   Older morality tables predict people will die at a faster rate than current mortality tables.  Using an older mortality table with accelerated death rates decreases the

present value of the joint and survivor annuity and, ultimately, the monthly payment that retirees receive under a joint and survivor annuity.

7.     The interest rate used also affects the amount of a joint and survivor annuity.

8.     The mortality rate and the interest rate both affect whether an optional benefit is actuarially equivalent to a SLA.  For example, an old mortality table with an unreasonably high mortality rate (which results in a lower benefit) can be offset by a high interest rate (which provides for a higher benefit). The issue is whether the mortality and interest rate assumptions together result in a conversion factor that provides for a truly equivalent benefit.

9.     American sponsors several defined benefit retirement plans for its employees, including the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO ("Transport Workers Plan"), the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers (the "Management Plan"), the Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants (the "Flight Attendants' Plan"), and the American Airlines, Inc. Pilot Retirement Benefit Program Fixed Income Plan (the "Pilots' Plan" and, collectively, the "Plans").  Under the terms of the Plans, American promises Plan participants and beneficiaries a retirement income that is based on their income and length of service.

10.     Each of the Plans offers joint and survivor annuities to participants, and each Plan specifies the use of the same actuarial assumptions when calculating those benefits.  Each Plan specifies using the UP 1984 mortality table, developed *over 30 years ago* when people had shorter life expectancies, and a 5 percent interest rate.  While a 5 percent interest rate could be reasonable, and fair based on the economic conditions during the Class Period, American's use of the UP 1984 mortality table is inherently unreasonable because of its outdated accelerated mortality rates.

11.     By using a 5 percent interest rate and the UP 1984 mortality table, Defendants do not provide true actuarially equivalent benefits and caused Plaintiffs and Class Members to unknowingly forfeit and lose part of their vested benefits due under the terms of the Plans. Accordingly, Plaintiffs and other participants in the Plans who receive joint and survivor annuities do not receive a true equivalent benefit to the SLA.  Improperly reduced pension benefits violate ERISA's anti-forfeiture rule and cause Plaintiffs and other participants and beneficiaries of the Plans injury every month and will continue to affect them throughout their retirements.

12.     Plaintiffs accordingly seek an order from the Court reforming the Plans to conform to ERISA, payment of future benefits as required under ERISA, payment of amounts improperly withheld, and such other relief as the Court determines to be just and equitable.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").

14.     This Court has personal jurisdiction over the Defendant because it is headquartered and transact business in, or resides in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process.

15.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiffs

16.     Plaintiff Olga Martinez Torres is a resident of Homestead, Florida, and a beneficiary in the Transport Workers Plan.  Ms. Torres' late husband worked for American for over 27 years until he passed away in April, 2018.  Ms. Torres, under the terms of the Transport Workers' Plan, has been receiving a pre-retirement survivor annuity since May 1, 2018.

17.     Plaintiff Linda Davis is a resident of Claremore, Oklahoma, and a beneficiary in the Transport Workers Plan.  Ms. Davis's late husband worked for American from 1990 until he passed away in May, 2016.  Ms. Davis, under the terms of the Transport Workers' Plan, has been receiving a pre-retirement survivor's annuity since June 1, 2016.

### Defendants

18.     Defendant American Airlines, Inc. ("American") is a network air carrier with its headquarters in Fort Worth, Texas.  American is a subsidiary of the American Airlines Group, Inc.  American is the sponsor the Plans. The Plans name American as the Plan administrator of the Plans.

19.     Defendant Employee Benefits Committee (the "Committee") is an unincorporated association with a principal place of business in Fort Worth, Texas.  According to the Plan financial statements, the "Committee was formed for the purpose of having responsibility for all fiduciary duties related to the administration and investment of the Plan[s]."

20.     John/Jane Does 1 through 5, inclusive, are the individual members of the Committee, or any other committee(s) responsible for administering the Plans.  Their names and identities are not currently known.

## APPLICABLE ERISA REQUIREMENTS

21.     ERISA requires that benefits from a defined benefit plan be paid in the form of a qualified joint and survivor annuity (a "QJSA") unless the participant, with the consent of his or her spouse (if applicable), elects an alternative form of payment, making the QJSA the default benefit under an ERISA plan for employees who are married.  ERISA § 205(a) and (b), 29 U.S.C. § 1055(a) and (b).

22.     A QJSA is an annuity for the life of the plan participant with a survivor benefit for the life of the spouse that is not less than 50%, and not greater than 100% of the annuity payable during the joint lives of the participant and the spouse.  ERISA § 205(d)(1), 29 U.S.C. § 1055(d)(1).  For example, if a plan participant receives $1,000 per month under a 50% joint and survivor annuity, the spouse will receive $500 a month after the participant's death.

23.     ERISA requires that a QJSA be the actuarial equivalent of a SLA for the life of the participant.  ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B).  A QJSA "must be as least as valuable as any other optional form of benefit under the plan at the same time."  26 C.F.R. § 1.401(a)-20 Q&A 16.

24.     Pension plans may also offer participants alternative forms of survivor annuities, known as qualified optional survivor annuities ("QOSA").  ERISA § 205(d)(2), 29 U.S.C. § 1055(d)(2)); *see also* 26 U.S.C. § 417(g).  For example, a pension plan might offer a QJSA in the form of a 50% joint and survivor annuity, while offering 75% and 100% joint and survivor annuities as QOSAs.  Other common forms of QOSAs are "certain and life" options whereby a participant (and beneficiary) receives benefits for at least a specified minimum number of years, regardless of how long the participant lives.  ERISA requires that QOSAs, like QJSAs, be the

actuarial equivalent of a SLA for the life of a participant.  ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A).

25.     ERISA also requires that defined benefit plans provide a qualified pre-retirement survivor annuity ("QPSA").  ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2).  A QPSA is an annuity for the life of the participant's surviving spouse (*e.g.*, a beneficiary) if the participant dies before reaching the plan's normal retirement age.  ERISA § 205(e), 29 U.S.C. § 1055(e).  ERISA requires that a QPSA be actuarially equivalent to what the surviving spouse would have received under the plan's QJSA and any QOSAs.  *Id.* at § 205(e)(1)(A), 29 U.S.C. § 1055(e)(1)(A).

26.     ERISA does not require that pension plans offer lump-sum distributions of vested benefits to retirees upon their retirement.  ERISA § 205(g), 29 U.S.C. § 1055(g).  If plans offer a lump-sum distribution as an optional benefit, Section 205(g)(3) of ERISA, 29 U.S.C. § 1055(g)(3), requires that the interest rate and mortality table specified in annually updated Treasury regulations be used to determine the actuarial equivalence of a lump-sum distribution of a plan's standard benefit.

27.     For QJSAs, QOSAs and QPSAs, however, while the interest rate and mortality table specified by the Treasury regulations *may* be used, a plan is permitted use alternative actuarial assumptions, so long as they are reasonable.  The Treasury regulations for the Tax Code provision corresponding to ERISA § 205 (26 U.S.C. § 401(a)(11)), provide that a QJSA "must be at least the actuarial equivalence of the normal form of life annuity…on the basis of consistently applied *reasonable* actuarial factors."  26 C.F.R. 1.401(a)-11(b)(2) (emphasis added).

28.     Treasury regulations concerning disclosures to plan participants similarly provide that optional benefits, like a QOSA, must be compared to a QJSA using:

> . . . a single set of interest and mortality assumptions that are *reasonable*
> and that are applied uniformly with respect to all such optional forms

> payable to the participant . . . .  For  this purpose, the reasonableness of interest and mortality assumptions is determined without regard to the circumstances of the individual participant.  In addition, the applicable mortality table and applicable interest rate (as prescribed by the Treasury) are considered reasonable actuarial assumptions for this purpose and thus are permitted (but not required) to be used.

26 C.F.R. 1.417(a)(3)-1(c)(2)(iv)(B)(emphasis added).

29.     Section 203(a) of ERISA, 29 U.S.C. § 1053(a), provides that an employee's right to his or her vested retirement benefits is non-forfeitable.  The Treasury regulation for the Tax Code provision corresponding to ERISA § 203 (26 U.S.C. § 411), states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."  26 C.F.R. § 1.411(a)-4(a).

## SUBSTANTIVE ALLEGATIONS

### I.     THE PLANS

30.     American established the Plans to "provide retirement income for eligible employees and their beneficiaries." *See*, *e.g.*, Management Plan Document at Preamble.  American sponsors each of the Plans.

31.     All participants in the Plans are current and former employees of American, spouses of current and former employees, or other beneficiaries.

32.     Each of the Plans is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

33.     Each of the Plans is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

34.     Each of the Plans is administered by American and Committee.  The Committee is comprised of five members, all of whom are officers of American.

35.     Under the terms of the Plans, participants are entitled to receive a monthly pension that begins at the Normal Retirement Benefit date of age 65. Participants' monthly pensions are based on a percentage of their compensation during their final five (5) years of service and how many years they worked for American.

36.     Each of the Plans provide that the normal form of retirement benefit for unmarried participants is a SLA.  For married participants, the normal form of benefit, and the Plans' QJSA, is a 50% joint and survivor annuity.  The Plans further provide that the 50% joint and survivor annuity form of benefit shall be the actuarial equivalent of a SLA.

37.     The Plans provide several QOSAs, including joint and survivor annuities that provide payments to the surviving spouse that are two-thirds, three quarters, or 100 percent of the benefit amount payable to the participant during the joint lives of the participant and the spouse. Each of the Plans also offer "certain and life" QOSA forms of benefit where participants can receive pension benefits for a minimum of 120, 180 or 240 months.  Again, the Plans provide that all such benefits must be actuarially equivalent to a SLA.

38.     Each of the Plans also offer guaranteed period annuities, level income annuities and installment annuities as additional QOSAs.  Each of these options, like the optional forms of survivor annuities, must be actuarially equivalent to a SLA.

39.     The Plans provide a QPSA to a surviving spouse if a vested participant dies before age 65.  The QPSA is the Plans' QJSA (*i.e.*, a 50% joint and survivor annuity) payable as if the member had retired on the date of his death.  For participants that meet certain eligibility criteria, their surviving spouse will receive a 100% joint and survivor annuity as a QPSA.

II.     **The Plans' Optional Forms of Benefit Are Not Actuarially Equivalent to a Single Life Annuity.**

        A.     **Converting a Single Life Annuity to Another Form of Benefit.**

    40.     Participants in the Plans accrue benefits in the form of a SLA. To convert a SLA into a QJSA, QOSA or QPSA, the present value of the future benefits that the participant (and, if applicable, the beneficiary) is expected to receive under both the SLA and the alternative form of benefit must be determined. The present values are then compared to determine the amount of the optional benefit that will be equivalent to the SLA. There are two main components of this conversion: an interest rate and a mortality table.

    41.     An interest rate is used to determine the present value of each future payment. This is based on the time value of money, meaning that money available now is worth more than the same amount in the future due to the ability to earn investment returns. The rate that is used is often called a "discount rate" because it discounts the value of a future payment.

    42.     The interest rate that a defined benefit plan uses should be based on prevailing market conditions. As such, the interest rate may be broken into segments of short-term, medium-term and long-term expectations pertaining to each future payment.

    43.     A mortality table is a series of rates which predict how many people at a given age will die before attaining the next higher age. More recent tables are "two-dimensional" in that the rates are based not only on the age of the individual but the year of birth. The Society of Actuaries, an independent actuarial group, publishes the mortality tables that are the most widely-used by defined benefit plans when doing these conversions. New mortality tables were published in 1971, 1983, 1984 (the "UP 1984"), 1994 (the "1994 GAR"), 2000 (the "RP-2000") and 2014 ("RP-2014") to account for changes to a population's mortality experience.

44.     Since the 1980s, the life expectancies in mortality tables have steadily improved as shown below:



Source: Aon Hewitt, *Society of Actuaries Finalizes New Mortality Assumptions: The Financial and Strategic Implication for Pension Plan Sponsors* (November 2014) at 1.  According to this paper, there have been "increasing life expectancies over time" and just moving from the RP-2000 mortality table to the RP-2014 table would increase pension liabilities by 7%.

45.     In the years between the publication of a new mortality table, mortality rates are often "projected" to future years to account for expected improvements in mortality.  For example, the RP-2014 mortality table is commonly projected by actuaries using a mortality improvement scale to account for additional reductions in mortality rates that have occurred since 2014.

46.     Using the selected interest rate and mortality table, the present values of the SLA and the alternative benefit are compared to calculate the amount of the alternative benefit that is actuarially equivalent to the SLA.

47.     Actuarial equivalence is determined pursuant to a formula that results in an annuity factor.  Changes to interest rates or mortality assumptions can have dramatic effects on the annuity

factor and the value of a joint and survivor annuity. More antiquated mortality assumptions (*i.e.*, using a mortality table with higher probabilities of death at a given age than is currently the case) generate lower present values of future payments, and the amount of the monthly benefit under a joint and survivor annuity decreases.

48.     Because antiquated mortality rates and higher interest rates have the opposite effects on the value joint and survivor annuities, using unreasonable assumptions for both criteria may produce a reasonable result. Put differently, using a high interest rate may counterbalance the effects of an old mortality table. The interest rate and mortality table used to calculate actuarial equivalent benefits must be viewed together to determine if they produce a reasonable, and equivalent, benefit for participants and beneficiaries.

### B.     The Plans Do Not Provide Actuarially Equivalent Benefits to Participants Who Receive a QJSA, QOSA or QPSA.

49.     Throughout the Class Period, each of the Plans uses a 5 percent interest rate and the 1984 Unisex Pension ("UP 1984") mortality table to calculate the QJSAs, QOSAs and QPSA and the other optional forms of benefit.

50.     The 5 percent interest rate that the Plans use is consistent with prevailing interest rates during the Class Period. For example, the Mercer Yield Curve, a commonly used rate by pension plans, has produced similar rates to the CPLI during the Class Period. The Mercer Yield rate was 4.26 percent and 3.88 percent at the end of September 2018 and 2017, respectively.

51.     Five percent is also the interest rate at which the Plans compensate participants when there has been an underpayment of benefits due to, for example, a miscalculation of a participant's years of service.

52.     The Plans' use of five percent as an interest rate when calculating actuarially equivalent benefits is reasonable. However, the Plans' use of the UP 1984 to calculate actuarially equivalent benefits is ***unreasonable***, ***especially*** when combined with a 5 percent interest rate.

53.     The UP 1984 has long been outdated, as it overstates mortality rates because people have steadily been living longer since 1984.

54.     By using the UP 1984 table, the Plans are decreasing the value of the QJSA, QOSA and QPSA relative to the SLA under the Plans, thereby reducing the monthly benefits that participants and beneficiaries would receive if updated, current mortality assumptions were used. Using the UP 1984 table instead of a mortality table with current data reduces the monthly benefit by over 6% for a 50% joint and survivor annuity and by over 11% for a 100% joint and survivor annuity.  Using the UP 1984 table similarly reduces the monthly payment of a "certain and life" annuity from what it should be if current, reasonable assumptions are used.  For example, the value of the Plans' 120 month "certain and life" option is reduced by over 7% because the Plans' outdated actuarial assumptions.

55.     American and the Committee knew that the UP 1984 used mortality rates that were outdated and that they produced lower monthly benefits for participants and beneficiaries receiving a QJSA, QOSA or QPSA.

56.     American and the Committee use very different mortality assumptions when they ***are*** not paying benefits to participants and beneficiaries but are instead calculating the amounts American must contribute to fund the Plans.   For example, in their December 31, 2012 Plan disclosure valuations, the Plans measured the Accumulated Benefit Obligation, or the actuarial present value of benefits earned to date. The actuaries used the RP-2000 mortality table projected to 2020 to update the mortality projections.  Selection of this mortality table updated to 2020 was

approved by the audit firm before public disclosure.  When actually determining the amount of those benefits, however, American used mortality data from 1984, which had much higher mortality rates for participants. Accordingly, American is paying the Plans' participants and beneficiaries much lower monthly amounts than they would have received if current data was used. Similarly, in their December 31, 2017 valuations, the Plans measured Accumulated Benefit Obligations by using the RP-2014 mortality table with an updated mortality improvement scale rather than the UP 1984 table.

57.     As a result of the mismatch of mortality tables used for determining "equivalent" benefits and the mortality tables used to disclose Plan liabilities, **every** participant who elected to receive a benefit in a form other than a SLA or lump sum has been subsidizing the Plan during the Class Period.

58.     At all times during the Class Period, American's use of the UP 1984 mortality table to calculate actuarially equivalent benefits was unreasonable.

59.     Because the Plans used grossly outdated mortality tables throughout the Class Period, the benefits paid to Plan participants who receive payments under either a QJSA, QOSA or QPSA are **not** actuarially equivalent to what they would have received if they had selected a SLA, in violation of ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B) and ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A).  Rather, the benefits payable under these optional forms of benefits are much lower than they should be.

60.     Plaintiffs are each beneficiaries of the Transport Workers' Plan who are receiving a QPSA. Because their benefits were calculated by using a 5 percent interest rate and the UP 1984 mortality table, Plaintiffs are receiving less each month than they would if the Plans used current,

reasonable actuarial assumptions.  They, along with other class members, have been substantially

damaged as a result of receiving benefits below an actuarially equivalent amount.

## CLASS ACTION ALLEGATIONS

61.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of themselves and the class (the "Class") defined as follows:

> All participants in and beneficiaries of the Plans who elected to
> receive an optional form of benefits other than a lump sum
> distribution of a participant's vested benefit.  Excluded from the
> Class are Defendants and any individuals who are subsequently to
> be determined to be fiduciaries of the Plans.

62.    The members of the Class are so numerous that joinder of all members is

impractical.  Upon information and belief, the Class includes thousands of persons; American

employs over 100,000 persons and the Plans in question cover transport workers, pilots, flight

attendants and managers.

63.    Plaintiffs' claims are typical of the claims of the members of the Class because

Plaintiffs' claims and the claims of all Class members arise out of the same policies and practices

as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful

conduct.

64.    There are questions of law and fact common to the Class and these questions

predominate over questions affecting only individual Class members.  Common legal and factual

questions include, but are not limited to:

> A.    Whether the Plans' formulae for calculating optional benefits provide
>
> benefits that are truly actuarially equivalent to those that would be paid
>
> under a single-life annuity for the plan participant;
>
> B.    Whether the Plans' actuarial assumptions are reasonable;

C.      Whether the Plans should be reformed to comply with ERISA; and

D.      Whether Plaintiffs and Class members should receive additional benefits.

65.    Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class actions.  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

66.    This action may be properly certified under either subsection of Rule 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

67.    In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

68.    In the alternative, certification under Rule 23(b)(3) is warranted because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

69.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

70.     Each of the Plans improperly reduces annuity benefits for participants who receive either a QJSA, a QOSA or a QPSA below the benefits that they would receive if those benefits were actuarially equivalent to a single-life annuity as ERISA requires.

71.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

72.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the Plans' established methodologies for calculating actuarial equivalence of QJSAs, QOSAs and QPSAs, including the joint and survivor annuity and "certain and life" options, violate ERISA because they do not provide an actuarially equivalent benefit.  By not providing an actuarially equivalent benefits, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

73.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

(a)     re-calculation and correction of benefits previously paid for QJSAs, QOSAs and QPSAs;

(b)     an "accounting" of all prior benefits and payments;

(c)     a surcharge

(d)    disgorgement of amounts wrongfully withheld;

(e)    disgorgement of profits earned on amounts wrongfully withheld;

(f)    a constructive trust;

(g)    an equitable lien;

(h)    an injunction against further violations; and

(i)    other relief the Court deems just and proper. and recalculation of previously paid benefits to determine the proper amounts that should have been paid; for payment of all benefits previously withheld, including under the theories of surcharge and disgorgement; and disgorgement of profits and amounts improperly withheld during the Class Period.

## SECOND CLAIM FOR RELIEF
### For Reformation of the Plans and Recovery of Benefits Under the Reformed Plans
### (ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1))

78.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

79.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

80.    Each of the Plans improperly reduces annuity benefits for participants who receive either a QJSA, a QOSA or a QPSA below the benefits that they would receive if those benefits were actuarially equivalent to a single-life annuity as ERISA requires. By not providing an actuarially equivalent benefits, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

18

81.     Plaintiffs are entitled to reformation of the Plans to require them to provide actuarially equivalent benefits.

82.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

83.     Plaintiffs seek to recover actuarially equivalent benefits, to enforce their right to the payment of past and future actuarially equivalent benefits, and to clarify their rights to future actuarially equivalent benefits, under the Plans following reformation.

### THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (ERISA §§ 1104 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))

84.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

85.     As the Plans' administrator, American is a named fiduciary of the Plans.

86.     As the organization named in the Plan as having responsibility for all fiduciary duties related to administration and investment of the Plan, the Committee is a named fiduciary of the Plan.

87.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan,

or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

88.     The Committee is a fiduciary for each of the Plans because it exercised discretionary authority or discretionary control respecting management of such plan or exercised any authority or control respecting management or disposition of Plan assets.  In particular, the Committee had authority or control over the amount and payment of benefits paid through QJSAs, QOSAs and QPSAs which were paid from Plan assets.

89.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as the Plans are consistent with ERISA.

90.     The Plans are not consistent with ERISA because they use the outdated UP 1984 mortality table to calculate actuarially equivalent benefits.  When combined with the Plans' use of a 5% interest rate, the Plans' calculation of benefits other than SLAs does not provide actuarially equivalent options which resulted in participants and beneficiaries illegally forfeiting and losing vested benefits.

91.     In following the Plans in violation of ERISA, the Committee exercised its fiduciary duties and control over Plan assets in breach of its fiduciary duties.

92.     In following the Plans in violation of ERISA, American breached its fiduciary duties.

93.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

94.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief, determining that the Plans' established methodologies for calculating actuarial equivalence of QJSAs, QOSAs and QPSA violate ERISA because they do not provide an actuarially equivalent benefit.

95.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

(a)     re-calculation and correction of benefits previously paid for QJSAs, QOSAs and QPSAs;

(b)     an "accounting" of all prior benefits and payments;

(c)     a surcharge

(d)     disgorgement of amounts wrongfully withheld;

(e)     disgorgement of profits earned on amounts wrongfully withheld;

(f)     a constructive trust;

(g)     an equitable lien;

(h)     an injunction against further violations; and

(i)     other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.      Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.      Declaring that the Plans fail to properly calculate and pay QJSAs, QOSAs and QPSAs that are actuarially equivalent to single-life annuities, in violation of ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B) and ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A);

C.      Ordering Defendants to bring the Plans into compliance with ERISA, including, but not limited to, reforming the Plans to bring them into compliance with ERISA with respect to calculation of actuarially equivalent QJSAs, QOSAs and QPSAs;

D.      Ordering Defendants to correct and recalculate benefits that have been paid;

E.      Ordering Defendants to provide an "accounting" of all prior payments of benefits under the Plans to determine the proper amounts that should have been paid;

F.      Ordering American to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement;

G.      Ordering American to disgorge any profits earned on amounts improperly withheld;

H.      Imposition of a constructive trust;

I.      Imposition of an equitable lien;

J.      Reformation of the Plans;

K.      Ordering Defendants to pay future benefits in accordance with ERISA's actuarial equivalence requirements

L.      Ordering Defendants to pay future benefits in accordance with the terms of the Plans, as reformed.

M.      Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper,

and such appropriate equitable relief as the Court may order, including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

  N. Awarding to Plaintiffs' counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

  O. Any other relief the Court determines is just and proper.

Dated: December 11, 2018                         Respectfully submitted,

                                                 */s/ Joe Kendall*
                                                 JOE KENDALL
                                                 Texas Bar No. 11260700
                                                 JAMIE J. MCKEY
                                                 Texas Bar No. 24045262
                                                 **KENDALL LAW GROUP, PLLC**
                                                 3811 Turtle Creek Blvd., Suite 1450
                                                 Dallas, Texas  75219
                                                 (214) 744-3000 / (214)744-3015 (Facsimile)
                                                 jkendall@kendalllawgroup.com
                                                 jmckey@kendalllawgroup.com


                                                 **IZARD, KINDALL & RAABE LLP**

                                                 Robert A. Izard (to be admitted *pro hac vice*)
                                                 Mark P. Kindall (to be admitted *pro hac vice*)
                                                 Douglas P. Needham (to be admitted *pro hac vice*)
                                                 Seth R. Klein (to be admitted *pro hac vice*)
                                                 29 South Main Street, Suite 305
                                                 West Hartford, CT 06107
                                                 Tel: (860) 493-6292
                                                 Fax: (860) 493-6290
                                                 Email:  rizard@ikrlaw.com
                                                 Email:  mkindall@ikrlaw.com
                                                 Email:  dneedham@ikrlaw.com


                                                 **BAILEY & GLASSER LLP**
                                                 Gregory Y. Porter (to be admitted *pro hac vice*)
                                                 Mark G. Boyko (to be admitted *pro hac vice*)
                                                 1054 31st Street, NW, Suite 230
                                                 Washington, DC 20007
                                                 (202) 463-2101
                                                 (202) 463-2103 fax
                                                 gporter@baileyglasser.com
                                                 mboyko@baileyglasser.com


                                                 ***Counsel for Plaintiffs***

24