## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| OLGA MARTINEZ TORRES and LINDA DAVIS, on behalf of themselves and all others similarly situated, | § § § § | |
| | § | Case No. 4:18-cv-00983-O |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5, | § § § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS AMERICAN AIRLINES, INC. AND THE EMPLOYEE BENEFITS COMMITTEE'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Dee J. Kelly, Jr. (S.B. # 11217250)
Lars L. Berg (S.B. # 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly.2@kellyhart.com
lars.berg@kellyhart.com

Mark W. Robertson (*pro hac vice pending*)
(N.Y. Bar # 4508248)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061

Shannon M. Barrett (*pro hac vice forthcoming*)
(D.C. Bar # 476866)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300
Fax: (202) 383-5300
sbarrett@omm.com

Wayne Jacobsen (*pro hac vice forthcoming*)
(Cal. Bar # 106824)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel.: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Defendants American Airlines, Inc. and the Employee Benefits Committee*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF PLAINTIFFS' ALLEGATIONS ............................................. 2

III.  ARGUMENT ..................................................................................................... 3

    A.   Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim
        Under Federal Rule of Civil Procedure 12(b)(6). ................................... 3

        1.   The Plan Complies With ERISA's Statutory and Regulatory
            Provisions and Its Use of the UP-1984 Mortality Table Is
            Expressly Authorized.................................................................. 4

        2.   The UP-1984 Mortality Table Will Remain A "Standard Mortality
            Table" Until Such Time As The Statute And/Or Regulations Are
            Amended And Cannot Stop Being Reasonable By Judicial Fiat.............. 6

IV.   CONCLUSION................................................................................................... 8

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................3

*Bass v. Stryker Corp.*,
   669 F.3d 501 (5th Cir. 2012) ............................................................................3

*Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Retirement Income Trust*,
   191 F. Supp. 2d 223 (D. Mass. 2002) ..............................................................5

*Machete Prods., L.L.C. v. Page*,
   809 F.3d 281 (5th Cir. 2015) ............................................................................3

*McDaniel v. Chevron Corp.*,
   203 F.3d 1099 (9th Cir. 2000) ..........................................................................5

*Rhoades, McKee, & Boer v. United States*,
   822 F. Supp. 445 (W.D. Mich. 1993) ...............................................................7

*Tulley v. Ethyl Corp.*,
   861 F.2d 120 (5th Cir. 1988) ............................................................................4

*Vinson & Elkins v. Commissioner*,
   99 T.C. 9 (U.S. Tax Ct. 1992)...........................................................................7

**Statutes**

29 U.S.C. § 1083(h)(3)(B) ...........................................................................................6

**Regulations**

26 C.F.R. § 1.401(a)(4)-3(f)(7).....................................................................................2, 6

26 C.F.R. § 1.401(a)(4)-12............................................................................................1, 5

Defendants American Airlines, Inc. ("American") and the Employee Benefits Committee (collectively, "Defendants"), respectfully move the Court to dismiss Plaintiffs Olga Martinez Torres and Linda Davis' ("Plaintiffs") Complaint under Federal Rule of Civil Procedure 12(b)(6) and submit this memorandum in support of that motion.

## I.     INTRODUCTION

In this unprecedented lawsuit under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs have attempted to concoct a theory of liability that is directly contrary to, and refuted by, the applicable federal regulations.  They allege that it was "unreasonable" for the Retirement Benefit Plan of American Airlines, Inc. (the "Plan") to calculate benefits using the mortality table specified in the Plan—even though federal regulations expressly provide that the table used by the Plan is a "standard mortality table" that is "reasonable" for plan administrators to use.  The Plan, Plaintiffs say, should be required to replace that standard mortality table with one more to their liking, and to do so without negotiating with the Transport Workers Union of America, AFL-CIO ("TWU") over changes to the collectively bargained Plan.  Plaintiffs' claims are baseless and should be dismissed for failure to state a cognizable cause of action.

The Plan calculated Plaintiffs' benefits using the "Unisex Pension 1984 Table," commonly referred to as the UP-1984 table.  Plaintiffs cite a federal regulation requiring that the actuarial factors used in calculating pension benefits be "reasonable" (Compl. ¶ 27 (quoting 26 C.F.R. § 1.401(a)-11(b)(2))), and they argue, without any support in the regulations or elsewhere, that the Plan's use of the UP-1984 table became unreasonable once newer mortality tables were issued.  (*Id.* ¶ 53.)  What Plaintiffs ignore, however, is that other sections of the federal regulations specifically list UP-1984 as a "standard mortality table" (26 C.F.R. § 1.401(a)(4)-12) and further specifically provide that a "standard mortality table" is "among the assumptions considered reasonable" (26 C.F.R. § 1.401(a)(4)-3(f)(7)).

1

Because the UP-1984 mortality table incorporated in and used by the Plan is, as a matter of law, "reasonable," Plaintiffs' contrary allegations are meritless. Accordingly, their Complaint should be dismissed with prejudice.

## II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs are individuals who currently receive pension benefits from American "under the terms of" the Plan. (Compl. ¶¶ 16-17.) In other words, Plaintiffs do not (and cannot) allege that they are receiving less than they are entitled to under the plain language of the Plan. Rather, they allege that they are entitled to greater benefits than the Plan actually provides.

Plaintiffs allege that, under the Plan, "workers accrue retirement benefits in the form of a single life annuity ('SLA')." (*Id.* ¶ 2.) With an SLA, retirees receive monthly pension benefits beginning upon their retirements, and those payments cease upon their deaths.

Under ERISA, pension plans must "offer married retirees the option of receiving a payment stream for their life and their spouse's life after the retiree dies (a 'joint and survivor annuity')." (*Id.* ¶ 3.) In other words, pension benefits for a married retiree can, at the employee's option, continue until the later of the employee's death or the death of his or her spouse. As Plaintiffs acknowledge, the *quid pro quo* for electing an option that may provide pension benefits after the employee's death is that, "[w]hen retirees choose a joint and survivor annuity, they receive lower monthly pension payments than they would if they chose a SLA in exchange for their spouses receiving payments after their deaths." (*Id.* ¶ 4.)

Plaintiffs concede that the Plan offers joint and survivor annuities as required by ERISA. (*Id.* ¶ 10.) Their sole contention is that the methodology by which the Plan calculates joint and survivor annuities is improper. Plaintiffs allege: "ERISA requires that joint and survivor annuities be actuarially equivalent to an SLA . . . meaning that the present value of the payment streams should be the same." (*Id.* ¶ 4 (internal quotation marks and citations omitted).)

To determine the monthly benefit for joint and survivor annuitants, the Plan must apply an interest rate and a mortality table. (*Id.* ¶ 40.) Plaintiffs acknowledge that the five percent interest rate used by the Plan is generous and challenge only the mortality table, not the interest rate applied by the Plan. (*Id.* ¶¶ 49-50.) In particular, they contend that the UP-1984 mortality table used by the Plan is "outdated . . . because people have steadily been living longer since 1984." (*Id.* ¶ 53.)[1] By continuing to use the UP-1984 mortality table in accordance with the Plan's provisions, the Plaintiffs assert that Defendants are violating ERISA. That contention is without merit.

## III.   ARGUMENT

### A.   Plaintiffs' Claims Should Be Dismissed For Failure To State A Claim Under Federal Rule of Civil Procedure 12(b)(6).

"For the purposes of a motion to dismiss, we must take all of the factual allegations in the complaint as true, but we are not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here underlying facts are not disputed, the significance of those facts becomes a question of law." *Bass v. Stryker Corp.*, 669 F.3d 501, 507 (5th Cir. 2012). Here, Plaintiffs' assertion that the use of the UP-1984 mortality table violates ERISA is purely a legal conclusion, and that conclusion is flatly wrong.

---

[1] Not that it matters for purposes of this motion, but Plaintiffs' assertion that people have steadily been living longer since 1984 is not actually correct. According to the Centers for Disease Control and Prevention, life expectancy in the United States has been falling for years. *See* Mortality in the United States, 2017 (NCHS Data Brief No. 328, November 2018), https://www.cdc.gov/nchs/products/databriefs/db328.htm (last visited February 11, 2019); Mortality in the United States, 2016 (NCHS Data Brief No. 293, December 2017), https://www.cdc.gov/nchs/products/databriefs/db293.htm (last visited February 11, 2019); Mortality in the United States, 2015 (NCHS Data Brief No. 267, December 2016), https://www.cdc.gov/nchs/products/databriefs/db267.htm (last visited February 11, 2019).

1.      **The Plan Complies With ERISA's Statutory and Regulatory Provisions and Its Use of the UP-1984 Mortality Table Is Expressly Authorized.**

Plaintiffs allege that the Plan calculates pension benefits for joint and survivor annuitants in a way that violates ERISA.  They base their claims on the requirement in 29 U.S.C. § 1055(d)(1)(B) that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant," and specifically on what the term "actuarial equivalent" means.[2]

ERISA itself does not define "actuarial equivalent," but the statute is supported by extensive regulations.  Specifically, Reorganization Plan No. 4 of 1978 transferred to the Secretary of Treasury the authority to issue "regulations, rulings, opinions, variances and waivers" under ERISA, including with respect to joint and survivor annuities.  *See Tulley v. Ethyl Corp.*, 861 F.2d 120, 125 (5th Cir. 1988) ("[U]nder Reorganization Plan No. 4 of 1978, the Secretary of the Treasury of was assigned the Secretary of Labor's authority to issue regulations and rulings under 29 U.S.C. § 1055 . . . .").  The Secretary described how to determine actuarial equivalence in 26 C.F.R. § 1.401(a)-11(b)(2): "Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors, for each participant or for all participants or reasonable groupings of participants, if such determination does not result in discrimination in favor of employees who are officers, shareholders, or highly compensated."

Plaintiffs admit that the Plan uses "actuarial factors" in calculating joint and survivor annuities, that those actuarial factors are "consistently applied," and that there is no discrimination in favor of officers, shareholders, or highly compensated employees.  (Compl. ¶ 10 ("Each of the Plans offers joint and survivor annuities to participants, and each Plan

---

[2] The requirement of actuarial equivalence applies to a "qualified joint and survivor annuity," as defined in 29 U.S.C. § 1055(d)(1) (a "QJSA"), and to a "qualified [preretirement] survivor annuity," as defined in 29 U.S.C. § 1055(e)(1) (a "QPSA").  Plaintiffs are receiving QPSAs.  (Compl. ¶¶ 16-17.)

specifies the use of the same actuarial assumptions when calculating those benefits.").)  Their

sole contention is that one of the actuarial factors used by the Plan, the UP-1984 mortality table,

is not "reasonable" as required under federal regulations.[3]  They are wrong.

Plaintiffs baldly assert that the UP-1984 mortality table is "unreasonable," but they

simply ignore the regulations' express provisions stating that UP-1984 is a "standard mortality

table":

> *Standard mortality table.*  Standard mortality table means one of the following
> tables: **the UP-1984 Mortality Table (Unisex)**; the 1983 Group Annuity
> Mortality Table (1983 GAM) (Female); the 1983 Group Annuity Mortality Table
> (1983 GAM) (Male); the 1983 Individual Annuity Mortality Table (1983 IAM)
> (Female); the 1983 Individual Annuity Mortality Table (1983 IAM) (Male); the
> 1971 Group Annuity Mortality Table (1971 GAM) (Female); the 1971 Group
> Annuity Mortality Table (1971 GAM) (Male); the 1971 Individual Annuity
> Mortality Table (1971 IAM) (Female); or the 1971 Individual Annuity Mortality
> Table (1971 IAM) (Male).  These standard mortality tables are available from the
> Society of Actuaries, 475 N. Martingale Road, Suite 800, Schaumberg, Illinois
> 60173.  The Commissioner may, in revenue rulings, notices, and other guidance
> of general applicability, change the definition of standard mortality table.  See
> § 601.601(d)(2)(ii)(b) of this Chapter.  The applicable mortality table under
> section   417(e)(3)(A)(ii)(I)   is   also   a   standard   mortality   table.

26 C.F.R. § 1.401(a)(4)-12 (bold emphasis added); *see also McDaniel v. Chevron Corp.*,

203 F.3d 1099, 1111 (9th Cir. 2000) ("The UP-1984 Mortality Table is a standard mortality

table."); *Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Retirement Income Trust*, 191 F.

Supp. 2d 223, 237 n.5 (D. Mass. 2002) ("Two mortality tables are common: the UP-1984

mortality table . . . and the 1983 Group Annuity Mortality Table . . . .").

A "standard mortality table" including the UP-1984 table is, by express regulation,

"considered reasonable" for purposes of determining actuarial equivalence.   26 C.F.R.

§ 1.401(a)(4)-3(f)(7).  Specifically, "actuarial equivalence must be determined in a uniform

---

[3] As noted above, Plaintiffs admit that the [Plan] uses an appropriate standard interest rate.  (*See*
Compl. ¶ 50).

manner for all employees using reasonable actuarial assumptions.  A standard interest rate and a standard mortality table are among the assumptions considered reasonable for this purpose." *Id.*

Because the regulations designate UP-1984 as a standard mortality table and provide that the use of a standard mortality table is reasonable, Plaintiffs' claims fail as a matter of law.

> ### 2. The UP-1984 Mortality Table Will Remain A "Standard Mortality Table" Until Such Time As The Statute And/Or Regulations Are Amended And Cannot Stop Being Reasonable By Judicial Fiat.

American's use of the UP-1984 mortality table is reasonable as a matter of law because the regulations designate UP-1984 as a standard mortality table.  Plaintiffs allege that, because UP-1984 was "developed over 30 years ago . . . American's use of the UP 1984 mortality table is inherently unreasonable because of its outdated accelerated mortality rates."  (Compl. ¶ 10 (emphasis omitted).)  Plaintiffs' position is contrary to current federal regulations, which continue to list UP-1984 (as well as older mortality tables going back to 1971) as standard mortality tables.

The timing and scope of modifications to mortality tables that may be used for various purposes under ERISA is dictated by legislation and regulation, not litigation.  When Congress intends for mortality tables to be updated on a specified periodic basis, it specifies that timing expressly.  For example, with respect to the mortality tables required for funding purposes, Congress provided that "[t]he Secretary of the Treasury shall (at least every 10 years) make revisions in any table in effect under subparagraph (A) to reflect the actual experience of pension plans and projected trends in such experience."  29 U.S.C. § 1083(h)(3)(B).  No such requirement is included in 29 U.S.C. § 1055(d).  As a result, 26 C.F.R. § 1.401(a)(4)-12, authorizing the use of UP-1984 as a "standard mortality table," was last amended in 2001.  In the absence of any further modification of the regulation by the Secretary of the Treasury, use of the specifically defined tables, including UP-1984, continues to be reasonable.

Plaintiffs cite the RP-2014 mortality table as one that "is commonly projected by actuaries using a mortality improvement scale to account for additional reductions in mortality rates that have occurred since 2014." (Compl. ¶ 45.) RP-2014, however, is not listed as a standard mortality table in 26 C.F.R. § 1.401(a)(4)-12. And just because more recent mortality tables have become available does not preclude the use of older tables, particularly where, as here, the regulations have not been changed to permit (much less require) the use of the more recent tables. In *Rhoades, McKee, & Boer v. United States*, 822 F. Supp. 445, 453 (W.D. Mich. 1993), for example, the Court specifically rejected the assertion that a more recent mortality table was to be used in place of an older approved table. While it did "not dispute [the] conclusion that the [more recent] Buck [mortality] table might be a more accurate predictor of mortality than the 1983-IAM," the Court found "the suggestion that plaintiffs should be penalized for their failure to use the Buck table, an unpublished table which is not listed as an option on the relevant tax form, untenable." *Id.; see also Vinson & Elkins v. Commissioner*, 99 T.C. 9, 52 (U.S. Tax Ct. 1992) (holding that the use of a 1958 mortality table was reasonable in 1992, and explaining that "to make a reasonable mortality assumption, one need not use the most recent table available"). Indeed, the regulation's inclusion of older mortality tables (dating back to 1971) among those that have explicitly been deemed reasonable directly contradicts Plaintiffs' core premise that the use of a mortality table is somehow rendered unreasonable when more recent tables become available.[4]

---

[4] Plaintiffs also allege that American uses "different mortality assumptions" for "calculating the amounts American must contribute to fund the Plans" than it does for "paying benefits to participants and beneficiaries"—as if this is somehow indicative of wrongdoing. (Compl. ¶ 56.) Nonsense. Unlike 26 C.F.R. § 1.401(a)-11(b)(2) and 26 C.F.R. § 1.401(a)(4)-3(f)(7), which permit the use of any reasonable mortality assumption, 29 U.S.C. § 1083(h)(3) expressly requires that, for calculating contributions, an employer must use mortality tables specified by the Secretary of Treasury.

The day may come when the Secretary of Treasury updates 26 C.F.R. § 1.401(a)(4)-12 and removes UP-1984 as a "standard mortality table."  Or the day may come when Congress requires the Secretary of Treasury to make such updates more regularly.  Until then, however, those regulations remain valid, and the Plan's use of a mortality table expressly authorized and approved under the regulations is not violative of ERISA.  Plaintiffs have not and cannot state a viable claim, and their Complaint should be dismissed with prejudice.

## IV.   CONCLUSION

For these reasons, Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated:  February 12, 2019

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*

| | |
|---|---|
| Mark W. Robertson (*pro hac vice pending*) | Dee J. Kelly, Jr. (S.B. # 11217250) |
| (N.Y. Bar # 4508248) | Lars L. Berg (S.B. # 00787072) |
| O'MELVENY & MYERS LLP | KELLY HART & HALLMAN LLP |
| 7 Times Square | 201 Main Street, Suite 2500 |
| New York, NY 10036 | Fort Worth, Texas 76102 |
| Tel.: (212) 326-2000 | Tel.: (817) 332-2500 |
| Fax: (212) 326-2061 | Fax: (817) 878-9280 |
| | dee.kelly.2@kellyhart.com |
| Shannon M. Barrett (*pro hac vice forthcoming*) | lars.berg@kellyhart.com |
| (D.C. Bar # 476866) | |
| O'MELVENY & MYERS LLP | |
| 1625 Eye Street, N.W. | |
| Washington, D.C. 20006 | |
| Tel.: (202) 383-5300 | |
| Fax: (202) 383-5300 | |
| sbarrett@omm.com | |

Wayne Jacobsen (*pro hac vice forthcoming*)
(Cal. Bar # 106824)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel.: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Defendants American Airlines, Inc. and the Employee Benefits Committee*

**CERTIFICATE OF SERVICE**

On February 12, 2019, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's CM/ECF system.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.