IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| OLGA MARTINEZ TORRES, LINDA DAVIS, ANGEL ALBERIO and FERNANDO POSSO, on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:18-cv-00983-O |
| v. | § § | |
| AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5, | § § § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants American Airlines, Inc. and the Employee Benefits Committee's Motion to Dismiss the Complaint and Memorandum of Law in Support (ECF No. 14), filed February 12, 2019; Plaintiffs' Response to Defendants' Motion to Dismiss (ECF No. 20) and Appendix in Support of Response (ECF No. 21), filed April 4, 2019; and Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint (ECF No. 24), filed May 6, 2019. Having considered the motion, briefing, pleadings, and applicable law, and for the reasons that follow, the Court **DENIES** Defendants American Airlines, Inc. and The Employee Benefits Committee's Motion to Dismiss the Complaint (ECF No. 14).

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This is a putative class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiffs allege they are participants and beneficiaries of

1

various defined benefit retirement plans sponsored by Defendant American Airlines, Inc. ("American") and administered by American and Defendant Employee Benefits Committee ("Committee") (collectively, "Defendants"). Plaintiffs contend Defendants failed to pay benefits under certain of American's defined benefit plans in amounts that are actuarially equivalent to a single life annuity for the life of a plan participant, as required by ERISA § 205, 29 U.S.C. § 1055. Plaintiffs further allege that by not offering actuarially equivalent pension benefits, Defendants are causing retirees to lose part of their vested retirement benefits in violation of the anti-forfeiture provisions of ERISA § 203(a), 29 U.S.C. § 1053(a).

In recounting the facts, the Court accepts as true all well-pleaded facts in Plaintiffs' Complaint ("Complaint") and views them in the light most favorable to Plaintiffs.

### A. The Plans

American sponsors several plans, including the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO ("Transport Workers Plan"); the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers (the "Management Plan"); the Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants (the "Flight Attendants' Plan"); and the American Airlines, Inc. Pilot Retirement Benefit Program Fixed Income Plan (the "Pilots' Plan") (collectively, the "Plans"). Compl. ¶ 9. Each of the Plans is an "employee pension benefit plan" and a "defined benefit plan" governed by ERISA. *Id.* ¶¶ 32, 33.

Under the terms of the Plans, eligible employees accrue retirement benefits in the form of a single life annuity ("SLA"), a monthly pension that begins at the normal retirement benefit date of age 65 and ends at death. The amount of the SLA is based on a percentage of an employee's

compensation during his or her final five years of service and total years of service for American. *Id.* ¶ 2.

Each of the Plans provides that the normal form of retirement benefits for unmarried participants is an SLA. *Id.* ¶ 36. Married participants who choose a joint and survivor annuity upon retirement receive lower monthly pension payments than if they had chosen an SLA, in exchange for their spouses receiving payments after their death. *Id.* ¶ 4. ERISA requires that joint and survivor annuities be "actuarially equivalent" to an SLA, ERISA §§ 205(d)(1)(B) and (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B) and (d)(2)(A)(ii), meaning the present value of the payment streams should be the same. *Id.*

Consistent with ERISA's requirements, a married participant's accrued benefit is automatically paid in the form of a 50% qualified joint survivor annuity ("QJSA") unless the participant's spouse consents to another form of benefit. *Id.* (citing ERISA § 205(a) and (b), 29 U.S.C. § 1055(a) and (b)). Each of the Plans provides that the 50% joint and survivor annuity form of benefit shall be actuarially equivalent to an SLA. *Id.*

The Plans also provide other qualified optional survivor annuities ("QOSAs"), including joint and survivor annuities that provide payments to the surviving spouse that are 75% or 100% of the benefit amount payable to the participant during the joint lives of the participant and the spouse. *Id.* ¶ 37. The Plans offer QOSAs in the form of "certain and life" annuities where participants can receive pension benefits for at least a specified minimum number of years, regardless of how long the participant lives. *Id.* As with the QJSA, the Plans provide that all such benefits must be actuarially equivalent to an SLA. *Id.*

Finally, the Plan provides a qualified preretirement survivor annuity ("QPSA") to a surviving spouse if a vested participant dies before age 65. *Id.* ¶ 39. The QPSA is the survivor

annuity portion of the Plans' QJSA—a 50% joint and survivor annuity—payable as if the member had retired on the date of his or her death. *Id.*

### B. Actuarial Assumptions (Converting an SLA into Other Forms of Benefits)

Participants in the Plans accrue benefits in the form of an SLA. To convert an SLA into a QJSA, QOSA, and QPSA, the present value of the future benefits that the participant (and, if applicable, the beneficiary) is expected to receive under both the SLA and the alternative form of benefit must be determined. *Id.* ¶ 40. The present values are then compared to determine the amount of the optional benefit that will be the equivalent of the SLA. "There are two main components of this conversion: an interest rate and a mortality table." *Id.* "An interest rate is used to determine the present value of each future payment." *Id.* ¶ 41. "A mortality table is a series of rates which predict how many people at a given age will die before attaining the next highest age." *Id.* ¶ 42. The Society of Actuaries, an independent actuarial group, publishes the mortality tables that are most widely-used by defined benefit plans when doing these conversions. *Id.* ¶ 43. New mortality tables were published in 1983, 1984 (the "UP-1984"), 1994 (the "1994 GAR"), 2000 (the "RP-2000"), and 2014 (the "RP-2014"), "to account for changes to a population's mortality experience." *Id.*

Mortality rates have improved over time with advances in medicine and better collective lifestyle habits. *Id.* ¶ 6. Since the 1980s, the life expectancies in mortality tables have steadily improved. *Id.* ¶ 44. "[T]here have been 'increasing life expectancies over time' and just moving from the RP-2000 mortality table to the RP-2014 table would increase pension liabilities by 7%." *Id.* (quoting Aon Hewitt, *Society of Actuaries Finalizes New Mortality Assumptions: The Financial and Strategic Implication for Pension Plan Sponsors* (Nov. 2014) at 1). Using older mortality tables with accelerated death rates decreases the present value of the joint and survivor annuity

and, ultimately, the monthly payment that retirees receive under a joint and several annuity. *Id.* ¶ 48. In addition to mortality rates, interest rates used in calculating the present value of benefits affects the amount of the joint and survivor annuity. *Id.* ¶ 47.

As previously stated, each of the Plans offers joint and survivor annuities to participants, and each Plan specifies the use of the same actuarial assumptions when calculating those benefits. Each Plan uses a 5% interest rate and specifies the use of the UP-1984 mortality table, developed over thirty years ago when people had shorter life expectancies, to calculate the QJSAs, QOSAs, and QPSAs, as well as other optional forms of benefits. *Id.* ¶ 49.

Plaintiffs contend that Defendants' use of a mortality assumption that is based on a 1984 mortality table is inherently unreasonable because of its outdated accelerated mortality rates. Specifically, Plaintiffs allege:

> By using the UP 1984 table, the Plans are decreasing the value of the QJSA, QOSA and QPSA relative to the SLA under the Plans, thereby reducing the monthly benefits that participants and beneficiaries would receive if updated, current mortality assumptions were used. Using the UP 1984 table instead of a mortality table with current data reduces the monthly benefit by over 6% for a 50% joint and survivor annuity and by over 11% for a 100% joint and survivor annuity. Using the UP 1984 table similarly reduces the monthly payment of a "certain and life" annuity from what it should be if current, reasonable assumptions are used. For example, the value of the Plans' 120 month "certain and life" option is reduced by over 7% because the Plans' outdated actuarial assumptions.

*Id.* ¶ 54. With respect to the 5% interest rate, Plaintiffs allege that while the rate, on its own, is not unreasonable, when combined with the Plans' use of the UP-1984 to calculate equivalent benefits, it yields an unreasonable result. *Id.* ¶ 52.

Plaintiffs also allege that Defendants "use very different mortality assumptions when they are not paying benefits to participants and beneficiaries but are instead calculating the amounts American must contribute to fund the Plans." *Id.* ¶ 56. In their December 31, 2012 Plan disclosure valuations, the Plans measured the Accumulated Benefit Obligation, or actuarial present value of

5

benefits earned to date, using the RP-2000 mortality table projected to 2020 to update mortality projections. "When actually determining the amount of those benefits, however, American used mortality data from 1984, which had much higher mortality rates for participants. Accordingly, American is paying the Plans' participants and beneficiaries much lower amounts than they would have received if current data was used." *Id.* Plaintiffs further contend that in their December 31, 2017 valuations, the Plans measured Accumulated Benefit Obligations by using the RP-2014 mortality table with an updated mortality improvement scale rather than the UP-1984 table. *Id.*

Plaintiffs allege that by using a mortality assumption based on the UP-1984 mortality table, along with a 5% interest rate, Defendants breached the Plans' promise to participants and beneficiaries to provide an actuarially equivalent benefit to the SLA, as required under ERISA, violated ERISA's prohibition against benefit forfeitures, and breached their fiduciary duties.

**C. Plaintiffs**

Plaintiff Olga Martinez Torres ("Torres") is a beneficiary of the Transport Workers Plan. Her late husband worked for American for 27 years until he passed way in April 2018. Torres, under the terms of the Transport Workers Plan, has been receiving a QPSA since May 1, 2018. Plaintiff Linda Davis ("Davis") is a beneficiary of the Transport Workers Plan. Her late husband worked for American from 1990 until he passed away in May 2016. Davis, under the terms of the Transport Workers Plan, has been receiving a QPSA since June 1, 2016. Plaintiff Angel Alberio ("Alberio") is a retired plan participant who (along with his spouse) is receiving a 50% QJSA. Plaintiff Fernando Posso ("Posso") is a retired plan participant who is receiving a 10-year certain QOSA.[1]

---

[1] On January 31, 2019, the Court granted Plaintiffs' unopposed motion to add Alberio and Posse as Plaintiffs to this action. As such, the Complaint does not allege any details concerning Alberio and Posse.

**D. The Complaint**

On December 11, 2018, Plaintiffs filed this putative class action lawsuit asserting claims for: (1) declaratory and equitable relief, including a judicial determination that the Plans' established methodologies for calculating actuarial equivalence of QJSAs, QOSAs and QPSAs, including the joint and survivor annuity and "certain and life" options, violate ERISA because they do not provide an actuarially equivalent benefit to the SLA; (2) equitable relief under reformed Plans pursuant to ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3); (3) violations of ERISA's prohibition against forfeitures set forth in ERISA § 203(a), 29 U.S.C. § 1053(a); and (4) breach of fiduciary duty in violation of ERISA § 404, 29 U.S.C. § 1104, and ERISA § 502(a)(3), 29 U.S.C. § 1132. Plaintiffs seek an order from the Court reforming the Plans to conform to ERISA, payment of future benefits as required under ERISA, and payment of amounts improperly withheld.

Plaintiffs assert these claims on behalf of themselves and on behalf of a putative class consisting of:

> All participants in and beneficiaries of the Plans who elected to receive an optional form of benefits other than a lump sum distribution or a participant's vested benefit. Excluded from the class are Defendants and any individuals who are subsequently determined to be fiduciaries of the Plans.

Compl. ¶ 61.

On February 12, 2019, Defendants filed a motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). In support, Defendants contend that the Plans comply with ERISA's statutory and regulatory provisions and that their use of the UP-1984 mortality table is "reasonable as a matter of law because the [Treasury] regulations designate UP-1984 as a standard mortality table." Defs.' Mot. to Dismiss 6 (ECF No.14). The motion has been fully briefed and is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the Court

assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

### III. ANALYSIS

Defendants argue that Plaintiffs fail to state a claim for ERISA violations because the Plans comply with ERISA's statutory and regulatory provisions. In support, they contend that their use of the UP-1984 mortality table to calculate optional forms of annuities (such as joint and survival annuities) is "reasonable as a matter of law because the [Treasury] regulations designate UP-1984 as a standard mortality table." Defs.' Mot. to Dismiss 6 (ECF No.14). Plaintiffs counter that the Treasury Regulations upon which Defendants rely have no bearing on the issues presented in this case, as those regulations relate to ascertaining that the employer-provided benefits under a defined benefit plan are nondiscriminatory in amount so as not to favor highly compensated employees, shareholders, and officers over other employees, and not to the issue presented in this case, namely, whether optional forms of pension benefits chosen by participants and beneficiaries under the Plans are "actuarially equivalent" to an SLA, as required under ERISA § 205. Prior to addressing

the parties' contentions, a summary of the pertinent sections of ERISA and the Treasury Regulations is required.[2]

### A. ERISA & Treasury Regulations

A QJSA must be actuarially equivalent to the SLA participants earned under the Plan. 29 U.S.C. § 1055(d)(1); 26 U.S.C. § 417(b). The Treasury Regulations for the Code provision corresponding to ERISA § 205 (26 U.S.C. § 401(a)(11)) likewise provide that a QJSA "must be at least the actuarial equivalence of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan." 26 C.F.R. § 1.401(a)-11(b)(2). A QJSA "must be as least as valuable as any other optional form of benefit under the plan at the same time." 26 C.F.R. § 1.401(a)-20 Q & A 16 (emphasis added). Similarly, ERISA and the Code both require that a QOSA be actuarially equivalent to an SLA. *See* 29 U.S.C. § 1055(d)(2); 26 U.S.C. § 417(g). The same is true of the QPSA. ERISA § 205(e)(1)(A), 29 U.S.C. § 1055(e)(1)(A).

"Actuarial equivalence" under ERISA is a term of art with an established meaning. *See Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 440 (D.C. Cir. 2011); *Pizza Pro Equipment Leasing, Inc. v. Commissioner of Internal Revenue*, 147 T.C. 394, 411 (2016) (citing *Stephens*), *aff'd,* 719 F. App'x 540 (8th Cir. 2018); *UnitedHealthcare Ins. Co. v. Azar*, 330 F. Supp. 3d 173, 185 (D.D.C. 2018) (same). "Two modes of payment are actuarially equivalent when their present values are equal under a given set of assumptions." *Stephens*, 644 F.3d at 440; *see also Dooley v. Am. Airlines, Inc.*, 1993 WL 460849, at *11 (N.D. Ill. Nov. 4, 1993) ("The term 'actuarially equivalent' means equal in value to the present value of normal retirement benefits, determined on

---

[2] Reorganization Plan No. 4 of 1978 transferred authority to the Secretary of the Treasury to issue regulations for several provisions of ERISA, including ERISA § 205 concerning alternative forms of benefits. *See* ERISA § 3002(c), 29 U.S.C. § 1202(c); *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746-47 (2004) (holding that Regulations under Tax Code § 411 apply to ERISA); *Esden v. Bank of Boston*, 229 F.3d 154, 157 n.2 (2nd Cir. 2000).

the basis of actuarial assumptions with respect to mortality and interest which are reasonable in the aggregate."); *see also Bird v. Eastman Kodak Co.*, 390 F. Supp. 2d 1117, 1118-19 (W.D.N.Y. 2005) ("By law, these optional forms of payment must have the same actuarial value as [plaintiff's] 'normal form of payment,' so that the cost to the Plan of providing the benefit is actuarially equivalent, regardless of what form of benefit is elected.").

Under ERISA, "present value" is expressly defined as "the value adjusted to reflect anticipated events." ERISA § 3(27), 29 U.S.C. § 1002(27). ERISA's present value definition expressly provides that such adjustments "shall conform to such regulations as the Secretary of the Treasury may prescribe." *Id.* Consistent with the ERISA's definition of present value, the Secretary has prescribed several Regulations which require the use of "reasonable" actuarial assumptions:

• The Treasury regulation concerning QJSAs provides that "[e]quivalence may be determined, on the basis of consistently applied reasonable actuarial factors, for each participant or for all participants or reasonable groupings of participants." 26 C.F.R.§ 1.401(a)-11(b)(2).

• For QJSAs, QOSAs and QPSAs, a plan must determine optional benefits using "a single set of interest and mortality assumptions that are reasonable . . . ." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv).

• The term actuarial present value means actuarial present value (within the meaning of § 1.401(a)(4)-12)) determined using "reasonable actuarial assumptions." 26 C.F.R. §1.411(d)-3(g)(1).

• With respect to benefits under a lump sum-based formula, any optional form of benefit must be "at least the actuarial equivalent, using reasonable actuarial assumptions . . . ." 26 C.F.R. § 1.411(a)(13)-1(b)(3).

As another district court explained with respect to actuarial equivalence in this context, the assumptions underlying computations to arrive at actuarial equivalence must be reasonable:

11

> When the terms of a plan subject to ERISA provide that plan participants may opt to receive their accrued pension benefits in forms other than as a single life annuity, the amount payable to the plan participant under such circumstances must be "actuarially equivalent" to the participant's accrued benefits when calculated as a single life annuity. The term actuarially equivalent means equal in value to the present value of normal retirement benefits, determined on the basis of actuarial assumptions with respect to mortality and interest which are reasonable in the aggregate.

*Dooley*, 1993 WL 460849, at * 10.

### B. Discussion

Defendants do not dispute that they are required to use "reasonable" actuarial assumptions for their actuarial equivalence calculation. They argue, however, that their use of the UP-1984 mortality table is "reasonable as a matter of law because the [Treasury] regulations designate UP-1984 as a standard mortality table." Defs.' Mot. to Dismiss 6 (ECF No.14). In support, Defendants point to the Treasury Secretary's nondiscrimination regulations, which provide that use of several "standard mortality tables"—including the UP-1984 mortality table—are "reasonable." 26 C.F.R. § 1.401(a)(4)-3(f)(7).

In response, Plaintiffs argue that the regulations upon which Defendants rely implement provisions of the tax code and have no application to this case, which concerns 26 C.F.R. § 1.401(a)-11. The Court agrees.

The Regulation upon which Defendants rely states that the use of several "standard actuarial tables," including the UP-1984 actuarial table, is "reasonable." This Regulation, however, is for the purposes of the nondiscrimination requirements of the Tax Code. 26 C.F.R. § 1.401(a)(4)-3(f)(7). Section 1401(a)(4)-3(f)(7) provides in relevant part:

> For purposes of this section, an employee's accrued benefit includes the actuarial equivalent of prior distributions. . . . For purposes of this paragraph (f)(7), actuarial equivalence must be determined in a uniform manner for all employees using reasonable actuarial assumptions. A standard interest rate and a standard mortality table are among the assumptions considered reasonable for this purpose.

12

Specifically, the section's purpose is to provide "rules for determining whether the employer-provided benefits under a defined benefit plan are nondiscriminatory in amount as required by § 1.401(a)(4)–1(b)(2)(iii)." 26 C.F.R. § 1.401(a)(4)(A)(1).

26 C.F.R. §§ 1.401(a)(4)-12 and 1.401(a)(4)-3(f)(7) "interpret the section 401(a)(4) requirement that contributions or benefits provided under a tax-qualified retirement plan not discriminate in favor of highly compensated employees." Nondiscrimination Requirements for Qualified Plans, 56 Fed. Reg. 47524-01 (Sept. 19, 1991). Notably, the preamble to the Regulation containing the "standard mortality table" definition makes clear that: "Unless otherwise provided, *the definitions in this section govern in applying the provisions of §§ 1.401(a)(4)-1 through 1.401(a)(4)-13.*" 26 C.F.R. § 1.401(a)(4)-12 (emphasis added). Accordingly, the definitions do not apply to, modify or provide guidance about the requirement that the actuarial equivalence of alternative forms of benefits be determined "on the basis of consistently applied reasonable actuarial factors actuarial assumptions." That requirement, which is at issue in this case, is found in *26 C.F.R. § 1.401(a)-11*. Section 1.401(a)-11 is explicitly *not* encompassed within the portions of the Regulations—§§ 1.401(a)(4)-1 through 1.401(a)(4)-13—to which the definitions of "standard mortality tables" apply.[3]

For these reasons, the Court agrees with Plaintiffs that 26 C.F.R. §§ 1.401(a)(4)-12 and 1.401(a)(4)-3(f)(7), which focus on whether one group of employees is favored over another with respect to nondiscrimination provisions of the Tax Code, have no application to the ERISA

---

[3] The Court recognizes that 26 C.F.R. § 1.401(a)-11 (at issue in this case) and 26 C.F.R. § 1.401(a)(4)-3(f)(7), upon which Defendants rely, are both located in Title 26, Chapter 1, Subchapter A, Part I, and Subgroup 2 of the same regulations, all of which were promulgated under 26 U.S.C. § 401. Given the plain language of § 1.401(a)(4)-3(f)(7), and its preamble limiting the definition of "standard mortality table" to §§ 1.401(a)(4)-1 through 1.401(a)(4)-13, the Court rejects Defendants' argument that the terms in each section should have the same meaning.

provisions at issue in this matter, which focus on whether employees receive the full amount of benefits to which they are entitled.

In addition to urging the Court to find that their use of the UP-1984 is reasonable as a matter of law under 26 C.F.R. § 1.401(a)(4)-3(f)(7)—an argument the Court has addressed above— Defendants cite to *Vinson & Elkins v. C.I.R.*, 99 T.C. No. 2 (1992), *aff'd*, 7 F.3d 1235 (5th Cir. 1993), to support their contention that reasonable mortality assumptions do not require use of an updated mortality table. *See* Defs.' Mot. to Dismiss 7. That case, however, lends support to Plaintiffs' position that failure to adjust assumptions to consider mortality improvements in calculating *post*-retirement benefits (as contrasted with preretirement benefits) may lead to unreasonable benefit calculations. *Vinson & Elkins* involved a claim that a firm used unreasonable actuarial assumptions when calculating the value of tax-deductible contributions it made to its benefits plan. The plan actuary used the 1958 mortality table used by insurance companies for calculation of the preretirement death benefit that expired at a retirement age of 62. *Vinson & Elkins*, 99 T.C. No. 2 at 49-50. Because the preretirement death benefit was effectively a term life insurance policy that was not provided after retirement age, the court accepted the use of the 1958 mortality table for that purpose, as it calculated the life insurance premium expense for those dying by retirement age, "not to measure potential participant mortality." *Id.* at 52.

By contrast, the actuary used a 1971 mortality table to calculate the value of a post-retirement benefit. *Id.* at 53. Since the table was 15 years old at the time, the actuary added a 5% expense load "to account for the mortality improvement that was not reflected in the 1971 IAM table used for the postretirement assumptions of the plan." *Id.* The expense load offset the fact that the mortality table was not updated. Accordingly, the court held the 5% expense load was reasonable because the 1971 IAM table understated mortality assumptions. *Id.* at 56.

Consequently, "the value [was] adjusted to reflect anticipated events" as required by ERISA § 3(27), 29 U.S.C. § 1002(27). Here, Plaintiffs allege, and Defendants concede, that Defendants use the UP-1984 mortality table with no adjustments for mortality improvement.

Plaintiffs allege that based on current life expectancies, use of the UP-1984 mortality table by Defendants to calculate monthly payments for QJSAs, QOSAs, and QPSAs is not in accordance with ERISA. Although Defendants dispute these contentions, analysis of the truth of Plaintiffs' allegations is not appropriate when considering a motion to dismiss under Rule 12(b)(6). As previously stated, the Court must accept Plaintiffs' well-pleaded allegations as true. Plaintiffs allege that payments are not in conformity with actuarial equivalence requirements. At this juncture, the Court concludes that Plaintiffs have alleged a plausible claim that by using the UP-1984 mortality table to convert the amount of an SLA into an alternate form of benefit (such as a QJSA, QOSA, or a QPSA), assuming a 5% interest rate, Defendants fail to provide the participants and beneficiaries of the Plans with an actuarially equivalent benefit in violation of ERISA.

### B.  Anti-Forfeiture

Plaintiffs allege that Defendants violated ERISA's anti-forfeiture provisions, ERISA § 203(a), 29 U.S.C. § 1053(a). ERISA provides that a participant's "normal retirement benefit," defined as the "greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age," cannot be forfeited if a participant has satisfied ERISA's vesting requirements. ERISA §§ 203(a) and 3(22), 29 U.S.C. §§1053(a) and 1002(22). Improper actuarial adjustments that reduce a pension's value is a forfeiture under ERISA § 203. *See Contilli v. Local 705 Int'l Broth. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009).

Defendants' motion to dismiss does not specifically address Plaintiffs' contention that Defendants violated ERISA's anti-forfeiture provisions by using the UP-1984 actuarial table to

calculate optional benefits. However, to the extent Defendants are relying on their argument that use of the UP-1984 actuarial table is reasonable as a matter of law to support dismissal of Plaintiffs' anti-forfeiture claim, the Court has addressed this above. Discovery will reveal whether the benefits provided Plaintiffs under the QJSAs, QOSAs and QPSAs, including the joint and survivor annuity and "certain and life" options, are the actuarial equivalent of the benefits they would have received under an SLA. The Court finds that Plaintiffs have alleged sufficiently that the benefits they received are not actuarially equivalent to what they would have received under an SLA. Accordingly, the Court concludes that Plaintiffs have stated a plausible claim for improper forfeiture of benefits under ERISA.

### C. Breach of Fiduciary Duty

ERISA requires certain duties of parties who act as the fiduciaries for an ERISA fund. *See* ERISA § 404, 29 U.S.C. § 1104(a)(1). Specifically, ERISA imposes three general duties on pension plan fiduciaries: (1) to discharge their duties with prudence; (2) to diversify investments to minimize the risk of large losses; and (3) to act solely in the interest of the participants and for the exclusive purpose of providing benefits to those participants. *Id.*

Defendants' motion to dismiss does not specifically address Plaintiffs' contention that Defendants breached their fiduciary duties under ERISA. Insofar as Defendants are relying on their argument that use of the UP-1984 actuarial table is reasonable as a matter of law to support dismissal of Plaintiffs' breach of fiduciary duty claim, the Court has already addressed this argument.

### IV. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have made sufficient factual allegations to allege a plausible claim that Defendants have violated ERISA. Accordingly, the

Court **DENIES** Defendants American Airlines, Inc. and The Employee Benefits Committee's Motion to Dismiss the Complaint (ECF No. 14).

      **SO ORDERED** on this **7th day** of **August, 2019**.

                                        *[signature]*
                                      **Reed O'Connor**
                                    **UNITED STATES DISTRICT JUDGE**