**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| Olga Martinez Torres, Linda Davis, Angel Alberio and Fernando Posso, on behalf of themselves and all others similarly situated, | **Civil Action No.: 4:18-cv-00983-O** |
| Plaintiffs, | |
| vs. | |
| American Airlines, Inc., the Employee Benefits Committee and John/Jane Does 1-5 | December 2, 2019 |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................................. 1

II.    BACKGROUND ............................................................................................................... 1

    A.   Description of the Claims ....................................................................................... 1

    B.   Description of the Plans ......................................................................................... 2

    C.   Description of the Proposed Class .......................................................................... 4

III.   ARGUMENT ................................................................................................................... 5

    A.   The Proposed Class Meets All of the Requirements of Rule 23(a) .................................. 5

        1.  The Proposed Classes Satisfy Numerosity ................................................................ 6

        2.  There Are Many Central and Common Issues of Fact and Law ..................................... 7

        3.  The Named Plaintiffs' Claims Are Typical Of Those Of The Class ............................ 12

        4.  The Name Plaintiffs and Their Counsel Will Adequately Represent the Class ............. 13

    B.   The Class Satisfies the Requirements of Either Section 23(b)(1) or (b)(2) .................. 15

        1.  The Class Meets the Requirements for Rule 23(b)(1)(A) Certification ........................ 15

        2.  The Class Meets the Requirements for Rule 23(b)(2) Certification ............................ 18

            a.  Class Members Were Harmed in Essentially the Same Way ................................ 18

            b.  Declaratory and Injunctive Relief Predominates .................................................... 19

            c.  Plaintiffs Seek Specific Injunctive Relief ............................................................. 23

    C.   The Class Is Ascertainable ................................................................................... 24

    D.   Additional Requirements of Local Rule 23.2 ......................................................... 24

IV.   CONCLUSION ............................................................................................................... 25

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Allison v. Citgo Petroleum Corp.,*
   151 F.3d 402 (5th Cir. 1998) ................................................................. 19, 20, 22

*Amara v. Cigna Corp.,*
   775 F.3d 510 (2d Cir. 2014) ......................................................................... 21

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)...................................................................................... 15

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*
   242 F.3d 290 (5th Cir. 2001) ....................................................................... 12

*Boos v. AT & T, Inc.,*
   252 F.R.D. 319 (W.D. Tex. 2008), *modified* ............................................ 17

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n,*
   624 F.3d 185 (5th Cir. 2010) ....................................................................... 19

*Chavez v. Plan Benefit Servs., Inc.,*
   No. AU-17-CA-00659-SS, 2019 WL 4254627 (W.D. Tex. Aug. 30, 2019)........................... 12

*DeHoyos v. Allstate Corp.,*
   240 F.R.D. 269 (W.D. Tex. 2007) ............................................................... 22

*DeOtte v. Azar,*
   332 F.R.D. 188 (N.D. Tex. 2019) ............................................................... 24

*Des Roches v. Cal. Physicians' Serv.,*
   320 F.R.D. 486 (N.D. Cal. 2017).................................................................. 21

*Forbush v. J.C. Penney Co.,*
   994 F.2d 1101 (5th Cir. 1993) ..................................................................... 13

*Frey v. First Nat. Bank Sw.,*
   602 F. App'x 164 (5th Cir. 2015).................................................................. 24

*Garcia v. Gloor,*
   618 F.2d 264 (5th Cir. 1980) ......................................................................... 6

*Humphrey v. United Way of Texas Gulf Coast*, No. CIV.A. H-05-0758,
   2007 WL 2330933 (S.D. Tex. Aug. 14, 2007) ................................................ 16, 17

*In re 2014 Radioshack Erisa Litig.,*
   No. 4:14-CV-00959-O, 2016 WL 6561597 (N.D. Tex. Jan. 25, 2016).................................... 24

*In re Citigroup Pension ERISA Litig.,*
    241 F.R.D. 172 (S.D.N.Y. 2006) ................................................ 16

*In re Deepwater Horizon,*
    739 F.3d 790 (5th Cir. 2014) ................................................ 11 , 15

*In re Deepwater Horizon,*
    785 F.3d 1003 (5th Cir. 2015) ................................................ 24

*In re Enron Corp.,*
    No. CIV.A. H-01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006).................... 13

*In re Katrina Canal Breaches Litig.,*
    628 F.3d 185 (5th Cir. 2010) ................................................ 25

*In re Monumental Life Ins. Co.,*
    365 F.3d 408 (5th Cir. 2004) ................................................ 22

*Jenkins v. Raymark Indus. Inc.,*
    782 F.2d 468 (5th Cir. 1986) ................................................ 12

*LaFlamme v. Carpenters Local #370 Pension Plan,*
    212 F.R.D. 448 (N.D.N.Y. 2003) ................................................ 21

*Langbecker v. Electronic Data Sys. Corp.,*
    476 F.3d 299 (5th Cir. 2007) ................................................ 25

*Lillie v. Stanford Tr. Co.,*
    No. 3:13-CV-03127-N, 2016 WL 10591374 (N.D. Tex. May 2, 2016).................... 7

*Maldonado v. Ochsner Clinic Found.,*
    493 F.3d 521 (5th Cir. 2007) ................................................ 23

*Meidl v. Aetna, Inc.,*
    No. 15-CV-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017)........................ 17, 20, 21

*Miles v. Principal Life Ins. Co.,*
    720 F.3d 472 (2d Cir. 2013) ................................................ 20

*Morrissey v. Curran,*
    650 F.2d 1267 (2d Cir. 1981) ................................................ 21

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.,*
    798 F.3d 125 (2d Cir. 2015) ................................................ 21

*Ned-Sthran v. Methodist Hosps. of Dallas,* No. CIV.A.3:08-CV-0072-K,
    2008 WL 5420601 (N.D. Tex. Nov. 25, 2008)........................................ 25

iv

*Osberg v. Foot Locker, Inc.,*
  862 F.3d 198 (2dCir 2017) ................................................................... 21

*Shanehchian v. Macy's, Inc.,*
  No. 1:07-CV-00828, 2011 WL 883659 (S.D. Ohio Mar. 10, 2011)........................................ 18

*Simms v. Jones,*
  296 F.R.D. 485 (N.D. Tex. July 9, 2013) ................................................. 6

*Slade v. Progressive Sec. Ins. Co.,*
  856 F.3d 408 (5th Cir. 2017) ................................................................. 13

*Slipchenko v. Brunel Energy, Inc.,*
  No. 11-1465, 2013 WL 4677918 (S.D. Tex. Aug. 30, 2013) ................................ 6

*Stirman v. Exxon Corp.,*
  280 F.3d 554 (5th Cir. 2002) ................................................................. 12

*Stoffels v. SBC Commc'ns, Inc.,*
  238 F.R.D. 446 (W.D. Tex. 2006) ....................................................... 17

*Unger v. Amedisys Inc.,*
  401 F.3d 316 (5th Cir. 2005) ................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)...................................................................... 7, 8

*Ward v. Hellerstedt,*
  753 F. App'x 236 (5th Cir. 2018) ........................................................ 12

*Wit v. United Behavioral Health,*
  317 F.R.D. 106 (N.D. Cal. 2016)........................................................ 17

*Yates v. Collier,*
  868 F.3d 354 (5th Cir. 2017) ............................................... 10, 18, 19, 22, 23

## **Statutes**

26 U.S.C. § 401(a)(25).................................................................... 23

28 U.S.C. § 1331........................................................................... 24

29 U.S.C. § 1332(e)(1)................................................................ 16, 24

## **Regulations**

26 C.F.R. § 1.401(a)-11(b)(2) ......................................................... 9

v

## Rules

Fed. R. Civ. P. 23(a) .................................................................................................................. 5, 24

Fed. R. Civ. P. 23(a)(i)-(iv) ................................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 7, 11

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 12, 13

Fed. R. Civ. P. 23(a)(4) .......................................................................................................... 13

Fed. R. Civ. P. 23(b) ........................................................................................................ 15, 24

Fed. R. Civ. P. 23(b)(1) ............................................................................................... 5, 15, 17

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................... 15, 16, 17, 18, 25

Fed. R. Civ. P. 23(b)(1)(B) .................................................................................................... 25

Fed. R. Civ. P. 23(b)(2) ............................................................ 5, 15, 18, 19, 20, 21, 22, 23, 25

Fed. R. Civ. P. 23(g) ............................................................................................................... 14

## Other Authorities

Rev. Rul. 81-12, 1981-1 C.B. 228 (1981) ............................................................................. 16

William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed.2011) ....................................... 24

## I.      INTRODUCTION

Plaintiffs Olga Martinez Torres, Linda Davis, Angel Alberio and Fernando Posso (collectively, "Plaintiffs") have a straightforward complaint:  Defendants pay retirees who select optional forms of pension benefit payments (such as joint and survivor annuities) less than the actuarial equivalent of their accrued benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").  Complaint, ECF No. 1 ("Compl."), ¶¶ 1, 69–95.  Specifically, Plaintiffs allege that Defendants' use of an outdated 43-year old mortality table in the calculation of its optional benefit forms results in benefit payments that are substantially lower than the actuarially equivalent of a single life annuity (an "SLA").  Compl. ¶¶ 2–12, 30–60.

These claims are well-suited to a class action because Defendants use the ***same*** outdated mortality table and the ***same*** interest rate to calculate the ***same*** types of benefits for all members of the class that Plaintiffs seek to certify.  If those actuarial assumptions are unreasonable, the terms of the Plans at issue, which are identical, must be modified, and the past and future benefit payments of ***all*** class members must be adjusted to correct the shortfall.

## II.      BACKGROUND

### A.      Description of the Claims

Plaintiffs bring suit against American Airlines which, as sponsor of each of the Plans, included unreasonable actuarial assumptions in the Plans, and against the Employee Benefits Committee, which, acting as the administrator of each of the Plans,[1] has paid benefits to the Class that were less than the actuarial equivalent of an SLA, in violation of ERISA.  Plaintiffs seek

---

[1] Declaration of Douglas P. Needham ("Needham Decl.") at Ex. 2 (2009 TWU Plan, at §§ 11.3 and 11.8); Ex. 5 (2014 TWU Plan at §§ 11.3 and 11.8); Ex. 3 (2009 FA Plan at §§ 11.3 and 11.8); Ex. 6 (2014 FA Plan at §§ 11.3 and 11.8); Ex. 4 (2009 AMS Plan at §§ 10.3 and 10.8); and Ex. 7 (2014 FA Plan at §§ 10.3 and 10.8). *see also* Def. Answer, ECF No. 38, at 19.

1

declaratory, injunctive, and equitable relief.  Plaintiffs seek to certify a class of claims alleging that American Airlines has paid and is paying monthly retirement benefits to certain participants in three pension plans (the "Plans") that are lower than they should be.[2]

The Class includes participants and beneficiaries of the Plans receiving: (a) the Plans' designated "Qualified Joint and Survivor Annuity" ("QJSA"), which is a 50% Joint and Survivor Annuity ("JSA"), the 75% JSA that the Plans designated as their Qualified Optional Survivor Annuity ("QOSA"), and the other optional JSAs offered under the Plans (a 66 and 2/3% JSA and a 100% JSA); (b) those receiving a survivor benefit under of the Plans' Qualified Preretirement Survivor Annuity ("QPSA"); and (c) those receiving benefits in the form of a Guaranteed Payment Annuity, also known as a "certain and life annuity" ("CLA").   As this Court summarized, Plaintiffs allege that "by using the UP-1984 mortality table to convert the amount of an SLA into an alternate form of benefit (such as a QJSA, QOSA, or a QPSA), assuming a 5% interest rate, Defendants fail to provide the participants and beneficiaries of the Plans with an actuarially equivalent benefit in violation of ERISA."  Order, ECF No. 31, at 15.

### B.  Description of the Plans

Each of the Plans provides that the normal form of benefit is an SLA for an unmarried participant and the QJSA is for a married participant.[3]  The QJSA for each of the Plans pays an

---

[2] The Plans are the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO ("TWU Plan"), the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers (the  "AMS Plan"), and the Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants (the "FA Plan").  Compl., ¶ 9.  The Complaint also included a fourth plan, the American Airlines, Inc. Pilot Retirement Benefit Program Fixed Income Plan (the "Pilots' Plan").  However, after evaluating documents obtained in discovery, Plaintiffs have determined that the provisions of the Pilots' Plan were and are distinct from those of the other three Plans.

[3] Needham Decl. at Ex. 2 (2009 TWU Plan, at § 9.2); Ex. 5 (2014 TWU Plan, at § 9.2); Ex. 3 (2009 FA Plan, at § 9.2); Ex. 6 (2014 FA Plan, at § 9.2); Ex. 4 (2009 AMS Plan at § 8.2); and Ex. 7 (2014 AMS Plan, at § 8.2).

actuarially-reduced benefit during the joint lives of the Plan participant and his or her eligible spouse, and 50% of that benefit to the spouse for life if he or she outlives the participant (this is referred to as a "50% JSA").[4]  Each of the Plans offers three other options for joint and survivor annuities:  a $66^{2/3}$% JSA, a 75% JSA and a 100 JSA.[5]  Furthermore, each of the Plans permits a "level income" variation of the JSAs which permits the Plan Participant to receive a larger pension payment prior to becoming eligible for Social Security Benefits, with smaller payments thereafter.[6]

The Plans also have identical provisions relating to Qualified Preretirement Survivor Annuities:  the surviving spouse is entitled to receive the benefits that he or she would have been entitled to receive if the participant had selected the QJSA, commencing on the date that the deceased participant would have attained the earliest retirement age permitted under the Plan (immediately, if the participant had already attained that age).[7]  Additionally, each of the Plans provides that Plan participants can, while they are still living, chose an enhanced QPSA option that pays a survivor annuity in the form of one of the other JSAs available under the Plans.[8]

---

[4] Needham Decl. at Ex. 2 (2009 TWU Plan, at § 9.2(a)); Ex. 5 (2014 TWU Plan, at § 9.2(a)); Ex. 3 (2009 FA Plan, at § 9.2(a)); Ex. 6 (2014 FA Plan, at § 9.2(a)); Ex. 4 (2009 AMS Plan, at § 8.2(a)); and Ex. 7 (2014 AMS Plan, at § 8.2(a)).

[5] Needham Decl. at Ex. 2 (2009 TWU Plan, at § 9.4(b)(i)); Ex. 5 (2014 TWU Plan, at § 9.4(b)(i)); Ex. 3 (2009 FA Plan, at § 9.4(b)(i)); Ex. 6 (2014 FA Plan, at § 9.4(b)(i)); Ex. 4 (2009 AMS Plan, at § 8.4(b)(i)); and Ex. 7 (2014 AMS Plan, at § 8.4(b)(i)).  Each of the Plans designate the 75% JSA as the "Qualified Optional Survivor Annuity."  Ex. 2 (2009 TWU Plan, at § 2.79); Ex. 5 (2014 TWU Plan, at § 2.79); Ex. 3 (2009 FA Plan, at § 2.79); Ex. 6 (2014 FA Plan, at § 2.79); Ex. 4 (2009 AMS Plan, at § 2.80); and Ex. 7 (2014 AMS Plan, at § 2.80).

[6] Needham Decl. at Ex. 2 (2009 TWU Plan, at § 9.4(c)); Ex. 5 (2014 TWU Plan, at § 9.4(c)); Ex. 3 (2009 FA Plan, at § 9.4(c)); Ex. 6 (2014 TWU Plan, at § 9.4(c)); Ex. 4 (2009 AMS Plan, at § 8.4(c)); and Ex. 7 (2014 AMS Plan, at § 8.4(c)).

[7] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.80(b)); Ex. 5 (2014 TWU Plan, at § 2.80(b)); Ex. 3 (2009 FA Plan, at § 2.80(b)); Ex. 6 (2014 FA Plan, at § 2.80(b)); Ex. 4 (2009 AMS Plan, at § 2.81(b)); and Ex. 7 (2014 AMS Plan, at § 2.81(b)).

[8] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.43); Ex. 5 (2014 TWU Plan, at § 2.43); Ex. 3 (2009 FA Plan, at § 2.43); Ex. 6 (2014 FA Plan, at § 2.43); Ex. 4 (2009 AMS Plan, at § 2.42); and Ex. 7 (2014 AMS Plan, at § 2.42).

The Plans also offer identical CLA Options, called "Guaranteed Period Annuity Options." Participants receive a reduced annuity, payable to the participant for life, but if the participant dies before receiving a certain number of guaranteed payments, the participant's designated beneficiary will receive the remainder of the guaranteed payments.  The Plans all provide three CLA options with the same guaranteed payment periods – 120, 180 and 240 months (10, 15 or 20 years).[9]

Most significantly, each of the Plans provides that actuarial equivalence means "equality in value of the aggregate amounts expected to be received as a benefit under the Plan under different forms of payment based upon actuarial factors and assumptions" set out in the Plan.[10] And, each of the Plans employs the *same* two actuarial assumptions — a 5% interest rate and the UP-1984 mortality table, weighted 88% male and 12% female — to calculate actuarial equivalence for QJSAs, QOSAs, QPSAs and CLAs.[11]

### C.  Description of the Proposed Class

Plaintiffs propose to certify the following Class:

> All participants or beneficiaries of the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO, the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers, and the Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants, who began receiving pension benefits on or after December 11, 2012, in any form other than (a) a straight single-life annuity; (b) a lump-sum payment; or (c) an installment of fixed payments over a period certain. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the Plans.

---

[9] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 9.4(b)(iii)); Ex. 5 (2014 TWU Plan, at § 9.4(b)(iii)); Ex. 3 (2009 FA Plan, at § 9.4(b)(iii)); Ex. 6 (2014 FA Plan, at § 9.4(b)(iii)); Ex. 4 (2009 AMS Plan, at § 8.4(b)(iii)); and Ex. 7 (2014 AMS Plan, at § 8.4(b)(iii)).

[10] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.3); Ex. 5 (2014 TWU Plan, at § 2.3); Ex. 3 (2009 FA Plan, at § 2.3); Ex. 6 (2014 FA Plan, at § 2.3); Ex. 4 (2009 AMS Plan, at § 2.3); and Ex. 7 (2014 AMS Plan, at § 2.3).

[11] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.3); Ex. 5 (2014 TWU Plan, at § 2.3); Ex. 3 (2009 FA Plan, at § 2.3); Ex. 6 (2014 FA Plan, at § 2.3); Ex. 4 (2009 AMS Plan, at § 2.3); and Ex. 7 (2014 AMS Plan, at § 2.3).

As defined, the Class includes Plan Participants and beneficiaries who began receiving benefits in the form of a JSA, a QPSA or a CLA after December 11, 2012. The proposed Class Representatives each received one of these forms of benefits. Plaintiff Angel Alberio is receiving the designated QJSA, while Plaintiff Fernando Posso selected a 120-month CLA. Plaintiff Olga Martinez Torres and Plaintiff Linda Davis are each receiving survivor annuities under the TWU Plan's QPSA provisions; Ms. Martinez Torres is receiving a 50% JSA, while Ms. Davis is receiving a 100% JSA, which the Plans call an "Enhanced QPSA." Yet each was injured in the same way by Defendants' use of the same outdated mortality table to calculate his or her benefits.[12]

## III.   ARGUMENT

The proposed class should be certified. The class meets the requirements of Rule 23(a) as well as Rules 23(b)(1) and 23(b)(2). Furthermore, the class is ascertainable.

### A.  The Proposed Class Meets All of the Requirements of Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure provides that one or more class members may sue on behalf of a class when:

1)  The class is so numerous that joinder of all members is impracticable;

2)  There are questions of law or fact common to the class;

3)  The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4)  The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). For the reasons that follow, the proposed class satisfies all of the requirements of Rule 23(a), and class treatment is appropriate.

---

[12] As discussed below (*infra* at n. 23 and accompanying text), Plaintiffs do not believe that either separate classes or subclasses are required. However, if the Court prefers, it could certify either separate classes or sub-classes for CLAs, JSAs and/or QPSAs, and appoint Plaintiffs as representatives of the class or subclass corresponding to the benefit option each is receiving.

### 1. The Proposed Classes Satisfy Numerosity

Courts assess numerosity using "several factors, including the size of the class, ease of identifying members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. July 9, 2013) (quoting *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). Courts in this Circuit have found that joinder of as few as 67 individuals is impracticable in the ERISA context. *See, Slipchenko v. Brunel Energy, Inc.*, No. 11-1465, 2013 WL 4677918 at *6 (S.D. Tex. Aug. 30, 2013).

American Airlines has over 100,000 employees. Answer, ECF No. 38 at ¶ 62. As of December 31, 2013, 13,389 individuals in the Transport Workers Plan, 15,178 individuals in the Management Plan, and 6,156 individuals in the Flight Attendants' Plan were retired and receiving benefits under the Plans.[13] Moreover, the Plans provided data on active participants in various age brackets, estimates for the number of people likely to retire each year in various age brackets their likelihood of choosing a JSA.[14] This chart summarizes this information from 2017 Forms 5500:

| Plan | Data Set | 55–59 | 60–64 | 65–69 | 70+ | Totals |
|------|----------|-------|-------|-------|-----|--------|
| TWU Plan[15] | Active Plan Participants | 4610 | 2618 | 663 | 188 | **8079** |
| | Likelihood of retirement at age | 3%* | 9.5%* | 20% | 100% | |
| | Percentage Likely to take JSA | 40% | 40% | 40% | 40% | |
| FA Plan | Active Plan Participants | 2930 | 1950 | 821 | 208 | **5909** |
| | Likelihood of retirement at age | 5% | 22% | 10% | 100% | |
| | Percentage Likely to take JSA | 20% | 20% | 20% | 20% | |
| AMS Plan | Active Plan Participants | 2062 | 1217 | 360 | 101 | **3740** |
| | Likelihood of retirement at age | 13.5% | 17% | 20% | 100% | |
| | Percentage Likely to take JSA | 25% | 25% | 25% | 25% | |

[13] Needham Decl. at Ex. 8 (2013 TWU Form 5500, at 2 (AA0000082)); Ex. 9 (2013 FA Form 5500, at 2 (AA00001230)); and Ex. 10 (2013 AMS Form 5500, at 2 (AA00001938)).

[14] Needham Decl. at Ex. 11 (2017 TWU Form 5500, Sched. SB at Ln 26 (AA00002213)); Ex. 12 (2017 FA Form 5500, Sched. SB at Ln 26 (AA00000746)); and Ex. 13 (2017 AMS Form 5500 Sched. SB at Ln 26 (AA00000999)).

[15] Because the TWU Plan gave percentages for annual retirement by different age groupings (55–61, 62–64) than the groupings it used for the headcount of active participants, it was necessary to arbitrarily assign some portion of the 55–61 retirement percentage (5%) to the age 55–59 bracket and the remainder to the age 60–64 bracket).

These data do not permit direct calculation of the numbers of people who retired in a given year or selected a given form of benefit, since the number of "Active Plan Participants" per age group almost certainly includes both people who are still working at the company and people who are already collecting retirement benefits.  However, it strongly supports an inference that the class, encompassing all participants in the three Plans who retired at or after reaching age 65 over an almost seven-year period and selected any form of benefit other than a single-life annuity, a lump-sum payment or an installment payment, numbers in the thousands.[16]

Also supporting a finding of numerosity, the class is widely disbursed.  American Airlines serves more than 350 cities and operates hubs in Charlotte, Chicago, Dallas/Fort Worth, Los Angeles, Miami, New York, Philadelphia, Phoenix and Washington, D.C.[17] American Airlines' website advertises for jobs in cities such as Los Angeles, Providence, Charlotte, Tulsa and Chicago.  Needham Decl., Ex. 14.  While the Plans' records should be sufficient to locate the vast majority of class members, joinder of thousands of individuals residing in different states is clearly impractical.  Numerosity is accordingly satisfied.

### 2.   There Are Many Central and Common Issues of Fact and Law

Rule 23(a)(2) requires the named plaintiffs to show there are questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if the determination of even *one* question "will resolve *an* issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[16] Plaintiffs have requested additional documents in discovery that would permit them to give a precise number, but production is not complete at this time.  This should not be a bar to certification. *Lillie v. Stanford Tr. Co.,* No. 3:13-CV-03127-N, 2016 WL 10591374, at *4 (N.D. Tex. May 2, 2016) ("Although the exact number of class members in the class defined in this order is not known at this time, it will be easily ascertainable before final judgment").

[17] https://americanairlines.gcs-web.com/investor-relations (last accessed, 11/25/2019).

The central issue for all members of the Class is the same, regardless of which form of benefit they selected and regardless of how old they (or their beneficiary) were when they began receiving benefits:  Whether the benefits they are receiving (and have been receiving) are less than the "actuarial equivalent" of the  single-life annuity they could have selected when they began to receive benefits, in violation of ERISA.   Determining whether it was reasonable to calculate actuarial equivalence using the UP-1984 mortality table in combination with a 5% discount rate will resolve *the* central issue in the case for the entire Class.  That alone is sufficient to meet the commonality test the Supreme Court articulated in *Wal-Mart*.

The *factual questions* that are common to the Class include the following:

**What benefit options are available to Class Members?**  As noted in Section II-B above, the Plans all offer the same JSAs, QPSAs, Enhanced QPSAs and CLAs.  The Plans also each designate the 50% JSA as the QJSA and the 75% JSA as the QOSA.

**How do the Plans calculate the monthly benefit amounts for JSAs, QPSAs and CLAs?** Under each Plan, the amount of the JSAs, QPSAs and CLAs are all required to be "Actuarially Equivalent to the Single Life Annuity form of benefit provided for in" the immediately previous section of the Plan.[18]  Those preceding sections all identically define the Single-Life Annuity that forms the basis for the actuarial equivalence comparison as follows:

> The normal form of Retirement Benefit for a [participant] who is unmarried on his Benefit Commencement Date will be a Single Life Annuity.  The Single Life Annuity will provide a monthly annuity to the Member for life, with the provision for a minimum return to the Member and his Beneficiary equal to the Member's Employee Contributions, if any, with Credited Interest to the date payment of the Member's Retirement Benefit begins.[19]

---

[18] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 9.4(a)); Ex. 5 (2014 TWU Plan, at § 9.4(a)); Ex. 3 (2009 FA Plan, at § 9.4(a)); Ex. 6 (2014 FA Plan, at § 9.4(a)); Ex. 4 (2009 AMS Plan, at § 8.4(a)); and Ex. 7 (2014 AMS Plan, at § 8.4(a)).

[19] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 9.2(b)); Ex. 5 (2014 TWU Plan, at § 9.2(b)); Ex. 4 (2009 AMS Plan, at § 8.2(b)); Ex. 7 (2014 AMS Plan, at § 8.2(b)); *see also* Ex. 3 (2009 FA Plan,

Thus, the Plans all require that JSAs, QPSAs and CLAs be "actuarially equivalent" to the SLA available at the participant's "Benefit Commencement Date," which each of the Plans defines as "the first day of the first month for which an amount is payable to a [participant] as an annuity."[20]

Critically, each of the three Plans calculates "actuarial equivalence" for JSAs, QPSAs and CLAs using the same actuarial assumptions:  a 5% interest rate and the UP-1984 mortality table weighted 88% male and 12% female.  *See supra* n. 11.  Thus, benefit calculation methodologies are common for all class members in all three Plans, regardless of the form of benefit selected.

***Were the actuarial assumptions used to calculate class member benefits reasonable?***  As discussed in the declaration of Mitchell I. Serota, Ph.D., President of Mitchell I. Serota and Associates, an Enrolled Actuary (E.A.) under ERISA, a Fellow of the Society of Actuaries (F.A.) and a Member of the American Academy of Actuaries (M.A.A.A.), attached to the Needham Declaration as Exhibit 16, the UP-1984 table was published in 1976 based on data from the 1960s, when retirees were not living as long on average as they do today.  *Id.* at 25.  The table's assumptions about likely improvements in mortality during next decade proved to be inaccurate, and the table has been superseded by several more up-to-date tables over the years.  *Id.*

ERISA requires that plans determine actuarial equivalence using factors that are both "reasonable" and "***consistently applied***" when calculating benefits for participants and beneficiaries.  *See, e.g.,* 26 C.F.R. § 1.401(a)-11(b)(2).  The particular circumstances of each plan participant are irrelevant.  Thus, the Plans did, as required, apply the ***same*** actuarial factors to calculate the benefit payments of ***all*** members of the Class.  Moreover, every member of the Class

_____

at § 9.2(b)) and Ex. 6 (2014 FA Plan, at § 9.2(b) (defining term the same, except that each "his" is a "her" in the FA Plan)).

[20] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.12); Ex. 5 (2014 TWU Plan, at § 2.12); Ex. 3 (2009 FA Plan, at § 2.12); Ex. 6 (2014 FA Plan, at § 2.12); Ex. 4 (2009 AMS Plan, at § 2.12); and Ex. 7 (2014 AMS Plan, at § 2.12).

first began receiving benefits sometime after December of 2012 and, under the Plans, the earliest possible age at which they could receive their benefits was 55.[21]  If, as Plaintiffs argue and as Dr. Serota testifies, it was not reasonable to use the UP-84 mortality table to calculate benefits for retirees in December of 2012, it necessarily follows that it was not reasonable to use the UP-84 table to calculate the retirement benefits of ***any*** member of the proposed Class.  *See Yates v. Collier,* 868 F.3d 354, 362–63 (5th Cir. 2017) (commonality satisfied where expert testimony showed that the challenged practice was improper as to all class members, even though the practice had greater impacts on some class members than on others).

***Whether Class Members would receive larger monthly benefit payments if the Plans used reasonable actuarial assumptions during the proposed Class Period.***  As discussed in Dr. Serota's report, all members of the proposed Class would receive a larger monthly benefit if the Plans had calculated their benefits using mortality rate assumptions that were reasonable at the time that they commenced receiving benefits, even if Defendants had simultaneously used a lower interest rate in its calculations.  Serota Decl., at 28.  Thus, injury presents a common question.

***Calculation of Losses:***  Plaintiffs' prayer for relief requests that the Court order Defendants to recalculate the amount of their monthly benefit payments, pay them the correct amount going forward, and compensate them for the amounts that they have been shortchanged to date.  The Court could simply order Defendants to perform the necessary calculations, or Plaintiffs could perform the calculations at trial, using a methodology that was common to the Class that would involve a mechanical recalculation, substituting correct actuarial assumptions for the ones the Plans used in their original benefit calculations.  Serota Decl., at 30-33.

---

[21] Needham. Decl. at Ex. 2 (2009 TWU Plan, at § 2.30); Ex. 5 (2014 TWU Plan, at § 2.30); Ex. 3 (2009 FA Plan, at § 2.30); Ex. 6 (2014 FA Plan, at § 2.30); Ex. 4 (2009 AMS Plan, at § 2.30); and Ex. 7 (2014 AMS Plan, at § 2.30).

***Responsibility of Defendants:***  The Defendants' liability turns on the roles that they had with respect to the Plans.  This, too, presents common factual issues, because Defendant American Airlines is the sponsor of each of Plans at issue, and the Benefits Committee is the administrator.[22]

The ***legal issues*** that are common to the Class include:

- Whether ERISA and/or the Plans require actuarial equivalence for JSAs, QPSAs and CLAs;[23]

- Whether it is permissible to use unreasonable actuarial assumptions to calculate monthly benefits payable in the form of JSAs, QPSAs and CLAs;

- Whether failure to provide JSAs, QPSAs and CLAs that are actuarially equivalent to an SLA constitutes an impermissible forfeiture under ERISA Section 203;

- Whether American Airlines, as Plan Sponsor, is obligated to reform the Plan to ensure calculation of actuarially equivalent JSAs, QPSAs and CLAs;

- Whether the Benefits Committee, as administrator of the Plans, breached its fiduciary duties by authorizing payment of benefits that were not actuarially equivalent to an SLA as required by ERISA and/or the Plans;

- Whether Class Members are entitled to have their future benefit payments increased; and

- Whether Class Members are entitled to be paid the shortfall in their pension benefit payments to date.

In sum, the claims of all class members turn on the same legal and factual questions.  If Defendants' actuarial assumptions were unreasonable and improper with respect to any class member, they were unreasonable and improper with respect to all class members.  This is more than sufficient to satisfy the commonality requirement of Rule 23(a)(2).

---

[22] *See supra* n.1.

[23] Even if the legal analysis involving actuarial equivalence differed with respect to any permutation of these benefit types, it would not pose an obstacle to class certification.  A single class can contain multiple claims, some stronger than others, so long as the interests of the class align; moreover, even "fundamental conflicts" can be addressed through creation of subclasses. *In re Deepwater Horizon,* 739 F.3d 790, 813 (5th Cir. 2014) (creation of subclasses can avoid any fundamental conflicts, but is not needed to accommodate "differently weighted interests") (internal citation and quotation omitted).

### 3.   The Named Plaintiffs' Claims Are Typical Of Those Of The Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 n. 32 (5th Cir. 2001) (quoting *Jenkins v. Raymark Indus. Inc*., 782 F.2d 468, 472 (5th Cir. 1986)). "Thus, if the claims of the named plaintiffs and putative class members 'arise from a similar course of conduct and share the same legal theory,' typicality will not be defeated by factual differences." *Ward v. Hellerstedt,* 753 F. App'x 236, 246–47 (5th Cir. 2018) (quoting *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002)).

Here, Plaintiffs and all members of the Class are receiving JSAs, QPSAs and CLAs under Plans sponsored by American Airlines and administered by the same Benefits Committee, and the relevant provisions of the Plans are substantially the same.  In particular, all three Plans calculate all of these forms of benefits using the same, flawed, actuarial assumptions.  Each of the Plaintiffs is receiving a benefit — whether a JSA, a QPSA or a CLA — that was calculated using the UP-1984 table and a 5% interest rate, just like all other Class Members.  Moreover, each of the Plaintiffs would be receiving a larger monthly benefit today if their benefits had been calculated using actuarial assumptions that were reasonable on their Benefit Commencement Date.  Serota Decl., at 29-30.  All Class members would make arguments centered around the appropriateness of the UP-1984 mortality table to calculate their equivalent benefit, bring those claims under the same provisions of ERISA, and seek the same sort of remedies, regardless of which Plan they belonged to, when or at what age they retired, or which form of benefit they selected.  *See, e.g. Chavez v. Plan Benefit Servs., Inc.,* No. AU-17-CA-00659-SS, 2019 WL 4254627, at *3 (W.D.

Tex. Aug. 30, 2019) (plaintiffs can represent a class that includes participants in multiple ERISA plans where they challenge a common practice and rely on a common theory of liability) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)); *accord, In re Enron Corp.*, No. CIV.A. H-01-3913, 2006 WL 1662596, at *7 (S.D. Tex. June 7, 2006) (citing *Forbush*). Accordingly, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. The Name Plaintiffs and Their Counsel Will Adequately Represent the Class

To meet Rule 23(a)(4)'s requirement that plaintiffs must "fairly and adequately protect the interests of the class," plaintiffs must show "that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). As the Fifth Circuit has held, adequacy "encompasses three separate but related inquiries (1) the zeal and competence of the representative[s'] counsel; (2) the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). These requirements are met here.

Plaintiffs propose to have the class represented by attorneys from the law firms of Izard Kindall & Raabe, LLP ("IKR") and Bailey & Glasser LLP ("B&G") acting as Co-Lead Counsel, and by the Kendall Law Group, PLLC of Dallas acting as local counsel. These firms have shown successfully prosecuted the case to date, conducting extensive research in a highly technical field — actuarial science — in the context of a highly technical statutory and regulatory landscape. *See* Needham Declaration, ¶ 2. To date, counsel have consulted with Plaintiffs and experts, crafted a detailed complaint, successfully opposed a Motion to Dismiss, launched discovery, negotiated litigation issues with opposing counsel, and prepared this motion. *Id.* at ¶¶ 2-3.

13

Proposed class counsel have extensive relevant experience and are well-qualified to represent the Class.  Both IKR and B&G have served and are serving as class counsel in dozens of ERISA class actions around the country, including seven other lawsuits that similarly challenge benefit calculations that use outdated actuarial assumptions.  *See* Needham Decl., ¶¶ 5-6 and Ex. 1 (IKR firm resume), and the Declaration of Gregory Y. Porter at 5-9 and exhibits A-C (B&G firm resume and biographies of attorneys).  IKR and B&G are joined by Joe Kendall, who has decades of experience in the federal courts, particularly in this district.  *See* Declaration of Joe Kendall, at ¶¶ 2-5 and Exhibit A attached thereto (firm resume of the Kendall Law Group).[24]

The proposed Class Representatives are willing and able to actively participate in the litigation and protect the interests of the Class.  Each proposed representative is familiar with the details of their own benefit options and generally familiar with how those benefits were supposed to be calculated.  *See* Declaration of Olga Martinez Torres ("Martinez-Torres Decl."), at ¶¶ 2-4, Declaration of Linda Davis ("Davis Decl."), at ¶¶ 1-4; Declaration of Angel Alberio ("Alberio Decl."), at ¶¶ 2-4; and Declaration of Fernando Posso ("Posso Decl."), at ¶¶ 2-5.  They have discussed their situations with class counsel, provided all of their documents concerning their benefits, and responded to discovery, and they are prepared to testify at depositions and at trial if necessary.  Martinez-Torres Decl. at ¶¶ 4-8, Davis Decl. at ¶¶ 3-6; Alberio Decl. at ¶¶ 3-6; Posso Decl., at ¶¶ 4-8.  They have reviewed the Complaint filed in the case and have a non-expert's understanding of the theory of the case.  Martinez-Torres Decl. at ¶ 4, Davis Decl. at ¶ 7; Alberio Decl. at ¶ 4; Posso Decl., at ¶ 5.  Moreover, they understand that they are seeking to represent all of the people in all three plans that were injured just like they were, and fully intend to work hard

---

[24] For the same reasons, proposed Class Counsel satisfy the requirements of Rule 23(g).

to protect the interests of the Class as a whole in this litigation and maximizing their recovery. Martinez-Torres Decl. at ¶¶ 7-8, Davis Decl. at ¶ 7; Alberio Decl. at ¶ 6; Posso Decl., at ¶¶ 7-8.

Finally, the proposed Class representatives have no conflicts of interest with the other members of the Class. Their claims rise and fall on the same facts and legal theories as all other members of the Class, and their diverse experiences further ensure that all class members will be well-represented. As noted above, Ms. Martinez-Torres is receiving a QPSA survivor annuity in the form of a 50% JSA, Ms. Davis is receiving an enhanced QPSA survivor annuity in the form of a 100% JSA, Mr. Alberio selected the QJSA when he retired, and Mr. Posso selected the 120-month CLA. *See In re Deepwater Horizons,* 739 F.3d at 812–13 noting that named plaintiffs "were clearly adequate to protect the interests of the class as they included individuals and businesses asserting each category of loss and were assisted by adequate counsel.") (internal quotations omitted). The same is true here, and therefore adequacy is satisfied.

**B.  The Class Satisfies the Requirements of Either Section 23(b)(1) or (b)(2)**

A class that meets all of the requirements of Rule 23(a)(i)-(iv), may be certified if it satisfies *one* of the three subdivisions of Rule 23(b). *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Here, the Class could be certified under either Rule 23(b)(1) or 23(b)(2).

**1.  The Class Meets the Requirements for Rule 23(b)(1)(A) Certification**

Federal Rule 23(b)(1)(A) is satisfied where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The rule is designed for cases "where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem,* 521 U.S. at 614. That is plainly the case here.

15

Retirement plans must calculate benefits in a uniform way; they cannot use one set of actuarial assumptions to calculate one participant's benefits and a different set for another participant who retires at the same time.  Indeed, the Internal Revenue Code specifically provides that "whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are specified in the plan in a way which precludes employer discretion."  26 U.S.C. § 401(a)(25).[25]  Thus, Defendants were — and are — required to treat members of the class alike, which is why Plaintiffs are specifically seeking that the Plans be reformed to provide that benefits be calculated in accordance with reasonable actuarial assumptions, rather than the assumptions that were in all three Plans throughout the Class Period.

Courts have not hesitated to certify classes pursuant to Rule 23(b)(1)(A) in cases involving plan-wide policies affecting all participants in a defined benefit plan.  For example, in *Humphrey v. United Way of Texas Gulf Coast*, No. CIV.A. H-05-0758, 2007 WL 2330933 (S.D. Tex. Aug. 14, 2007), the Court certified a 23(b)(1)(A) class involving a challenge to a pension plan's methodology for calculating early retirement benefits.  Judge Harmon reasoned that this was precisely the sort of case for which Rule 23(b)(1)(A) was intended:

> Here, the court finds that certification of the Humphrey class would prevent incompatible standards of conduct. Individual suits might lead to conflicting orders on the interpretation of the 96 Plan and the resulting calculation of the ERP benefits. Under this scenario, the plan would be administering the ERP benefits using the "greater of" calculation for some beneficiaries and the "plus" calculation for others. This is precisely the type of incompatible conduct that Rule 23(b)(1)(A) aims to prevent. *See In re Citigroup Pension ERISA Litig.,* 241 F.R.D. 172, 179-80 (S.D.N.Y. 2006) (noting that Rule

---

[25] Nothing in the Tax Code or ERISA precludes plan sponsors from amending their plans to update actuarial assumptions that have ceased to be realistic, as Plaintiffs claim should have been done in this case.  Moreover, plan sponsors can, if they choose, adopt variable assumptions in their plan documents, so long as the variables are not within the control of the plan administrators. Rev. Rul. 81-12, 1981-1 C.B. 228 (1981).  For example, the Revenue Ruling describes a plan using "an interest rate equal to 50% of the prime rate of a specified unrelated bank.  *Id.* at Example 2.

23(b)(1) "speaks directly to ERISA suits" because of the statutory obligations under ERISA to treat all class members alike).

*Id.* at *10.  Similarly, in *Stoffels v. SBC Commc'ns, Inc.,* 238 F.R.D. 446, 456–57 (W.D. Tex. 2006), the court certified a 23(b)(1)(A) class of participants in an ERISA defined benefit plan, finding that individual suits in separate courts could create incompatible standards of conduct for defendant, who might  "be required to provide benefits, in compliance with ERISA, to some participants, but could legally forego the plan altogether in the latter scenario." *Accord, Boos v. AT & T, Inc.,* 252 F.R.D. 319, 325 (W.D. Tex. 2008), *modified* (Sept. 17, 2008).

Courts have applied the same logic in certifying Rule 23(b)(1) classes in cases, like the present one, that challenge a practice that is common to multiple ERISA plans.  For example, in *Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016), the court certified a class participants in multiple plans that were subject to a common "condition of coverage" policy that was the subject of the complaint, reasoning that defendants could be subject to inconsistent legal obligations in the absence of certification:

> . . . Plaintiffs have demonstrated that all class members' plans require as one condition of coverage that the treatment at issue must be consistent with generally accepted standards of care and that UBH Guidelines are intended to embody those standards. Thus, regardless of any differences with respect to other aspects of the class members' insurance plans, this common requirement of all of the plans means that multiple challenges to the Guidelines by putative class members could lead to inconsistent results. Similarly, as to the *Wit* State Mandate Class, UBH's Guidelines purportedly embody the standards that must be followed under state law as to all members whose claims fall under the laws of the relevant states. As a consequence, challenges to the Guidelines by multiple class members could subject UBH to inconsistent legal obligations with respect to the use of its Guidelines, making certification under Rule 23(b)(1) appropriate.

*Id.* at 133; *see also Meidl v. Aetna, Inc.,* No. 15-CV-1319 (JCH), 2017 WL 1831916, at *19 (D. Conn. May 4, 2017) (finding that "regardless of any differences with respect to class members' insurance plans, this common [benefit] requirement means that multiple challenges to [the benefit

policy] could lead to inconsistent results."); *Shanehchian v. Macy's, Inc.,* No. 1:07-CV-00828, 2011 WL 883659, at *9–10 (S.D. Ohio Mar. 10, 2011) (certification of a 23(b)(1)(A) class of participants in multiple plans was appropriate "because the fiduciary duties at issue in this case are owed to the Plans, thousands of separate individual actions could result in differing standards of duty and, thus, differing standards of conduct with respect to Defendants and the Plans, which would be an untenable outcome.").

As these cases demonstrate, the proposed class should be certified under Rule 23(b)(1)(A). In the absence of class certification, multiple participants in the three different plans could challenge Defendants' benefits calculations, resulting in multiple, inconsistent determinations of whether the Plans' actuarial assumptions were reasonable and what assumptions should be used instead.  This is the precise result that Rule 23(b)(1)(A) was designed to prevent.

### 2.   The Class Meets the Requirements for Rule 23(b)(2) Certification

Certification is also proper here because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  There are three requirements for certification under Rule 23(b)(2) "(1) "class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific."  *Yates v. Collier,* 868 F.3d 354, 366 (5th Cir. 2017) (internal citations and quotations omitted).  The Class in this case meets each of these three requirements.

### a.   Class Members Were Harmed in Essentially the Same Way

As the *Yates* court noted, "Rule 23(b)(2) does not require 'common issues,' but rather 'requires common behavior by the defendant towards the class . . . such that class members . . .

have been harmed in the essentially the same way.'"   868 F.3d at 367 (internal citations and quotations omitted).  In *Yates,* it did not matter that different inmates had different heat tolerances; what mattered was that all were "subject to the ***same*** policy on climate control . . . all have the ***same*** heat mitigation measures available to them . . . and all are (allegedly) harmed in essentially the ***same*** way — *i.e.,* by exposure to a substantial risk of serious harm because of exposure to excessive heat."  *Id.* at 368.  Similarly, *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n,* 624 F.3d 185 (5th Cir. 2010), upheld certification of a 23(b)(2) class challenging Fannie Mae's multi-family mortgagor policies despite significant differences among mortgage holders, because they signed similar agreements, Fannie Mae had uniform policies, and Fannie Mae's "behavior and policy of investing the various funds is generally applicable to the class."  *Id.* at 198–99.

Here, similarly, all class members were subject to the ***same*** policy on calculating actuarial equivalence (*i.e.,* using UP-1984 mortality assumptions coupled with a 5% interest rate), all have the ***same*** remedial measures available to them (reformation of plan document; recalculation of benefits; payment of proper amounts in future; payment of amounts improperly withheld to date), and all have been harmed in essentially the ***same*** way — their benefits are lower than they would have been if they had been calculated using reasonable actuarial assumptions.

### b.  Declaratory and Injunctive Relief Predominates

The (b)(2) class mechanism is "intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary."  *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412 (5th Cir. 1998).  Although a (b)(2) class can recover some forms of monetary relief, injunctive and declaratory relief must predominate.  *Id.* at 413.  Monetary relief does not predominate where it is "incidental" — that is, it "flow[s] directly from liability to the class ***as a whole*** on the claims forming the basis of the injunctive or declaratory relief."  *Id.* at 415 (emphasis in original).  Further,

19

> [T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Id.* The relief requested by the Class in this case fits squarely within the *Allison* standard.

Plaintiffs seek, first and foremost, a declaratory judgment that the Plans "fail to properly calculate" alternative forms of benefits "that are actuarially equivalent to single-life annuities." Compl., ECF No. 1, at 22, ¶ B.  Next, Plaintiffs requested a mandatory injunction, requiring Defendants to bring the Plans into compliance with ERISA's actuarial equivalence requirements, and to correct and recalculate benefits that have already been paid and provide an accounting of all prior payments.  *Id.* at 22, ¶¶ C, D, E, J.  Plaintiffs further request that all future benefits payments to the Class be the actuarial equivalent of the single-life annuity they could have received on their benefit commencement date.  *Id.* at 22, ¶ K.  If the Court grants this requested declaratory and injunctive relief, payment of amounts improperly withheld to date, whether through surcharge or disgorgement (¶¶ F and G), a constructive trust (¶ H) or an equitable lien (¶ I), would be calculated in accordance with an objective standard, would not depend on intangible or subjective differences in Class Members' circumstances, and would not require additional hearings.

Courts have routinely held that a "reprocessing injunction" is "the appropriate type of relief" for classes certified under Rule 23(b)(2). *See Meidl*, 2017 WL 1831916, at *22 ("[I]n an ERISA case, where insurance administrators unlawfully deny benefits, the appropriate remedy is 'typically' to 'return the claim' to the insurance plan administrator 'for reconsideration.'" (quoting *Miles v. Principal Life Ins. Co.,* 720 F.3d 472, 490 (2d Cir. 2013))). "[T]he Court can order

20

Defendants to reprocess individual claims and determine if each class member is entitled to coverage or compensation." *Des Roches v. Cal. Physicians' Serv.,* 320 F.R.D. 486, 509 (N.D. Cal. 2017) (collecting and discussing cases); *see also LaFlamme v. Carpenters Local #370 Pension Plan,* 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003) (certifying Rule 23(b)(2) class seeking "recalculation of benefits" pursuant to correct interpretation of plan).

Damages that flow from this recalculation are "incidental" to the reprocessing injunction and are an allowable remedy to a Rule 23(b)(2) class. "[A] reprocessing order is not properly treated as monetary relief. Rather than seeking payment, a reprocessing claim simply seeks that claims be reprocessed via a lawful method, despite the fact that certain class members may receive no payment even after the reprocessing." *Meidl,* 2017 WL 1831916, at *21 (collecting cases).[26] Reprocessing damages can also be awarded as a surcharge. As one court noted:

> [W]here, as here, a plan participant brings suit against a plan fiduciary . . . for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with "surcharge" . . . constitutes equitable relief under § 502(a)(3). . . . And so we hold that to the extent [plaintiff] seeks redress for [defendant]'s past breaches of fiduciary duty or seeks to enjoin [defendant] from committing future breaches, the relief sought would count as "equitable relief" under § 502(a)(3).

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (internal citations and quotations omitted). "For a trustee's account to be surcharged, he need not be guilty of fraud or intentional wrongdoing, but simply have failed to discharge a duty required by law." *Morrissey v. Curran,* 650 F.2d 1267, 1282 (2d Cir. 1981).

---

[26] *See also Amara v. Cigna Corp.,* 775 F.3d 510, 523 (2d Cir. 2014) (affirming award of monetary relief, noting "[w]hen the plan is reformed according to the district court's order, monetary benefits flow as a necessary consequence of that injunction"); *Osberg v. Foot Locker, Inc.,* 862 F.3d 198, 215 (2d Cir. 2017)(reaffirming court's power to requiring reprocessing to conform to reformed ERISA plan), *cert. denied,* 138 S. Ct. 981 (2018); *LaFlamme,* 212 F.R.D. at 456 (noting damages that arise from recalculation of benefits "can only be said to be incidental to the declaration that defendants' . . . plan is in violation of the law").

It is true that the amounts owed to each Class Member will differ based on the amount of the participant's accrued benefit, participant's age at retirement, the age of the participant's beneficiary (for a JSA or QJSA), and the form of benefit selected. These, however, are exactly the sort of objective differences that do ***not*** cause monetary relief to predominate. This is most clearly demonstrated by *In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir. 2004), which involved the calculation of restitutionary relief to large numbers of policyholders. While the Court acknowledged that the class was not "entitled to a one-size-fits-all refund," it found that the differences in circumstances could be addressed by standardized formulas and restitution grids. *Id.* at 418–19. The Court specifically rejected defendants' argument that "thousands" of grids would be required to account for different class members' circumstances:

> That may be so, but the monetary predominance test does not contain a sweat-of-the-brow exception. Rather, we are guided by its command that damage calculation "should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Allison,* 151 F.3d at 415.

> In the list of policy variables cited by defendants and the district court, none requires the gathering of subjective evidence. . . . Rather, assuming that unlawful discrimination is found, class members automatically will be entitled to the difference between what a black and a white paid for the same policy. Not coincidentally, such damages flow from liability in much the same manner that an award of backpay results from a finding of employment discrimination.

> . . . .The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular plaintiffs. The prevalence of variables common to the class makes damage computation virtually a mechanical task. Finally, defendants' records contain the information necessary to determine disparities between, on the one hand, dual rate and dual plan policies, and on the other hand, plans sold to whites. Damage calculations do not require the manipulation of data kept outside defendants' normal course of business.

*Id.* at 419–20 (internal citations and quotations omitted); *accord*, *DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 284–85 (W.D. Tex. 2007) (certifying 23(b)(2) class "harmed in essentially the same

way" who sought injunctive relief requiring defendant "to replace its credit scoring algorithm" as well as "[e]quitable restitution . . . in the form of a monetary payment, based on an objective calculation and not dependent on class members' intangible, subjective differences").

Here, Defendants applied the same unreasonable actuarial assumptions to calculate all Class members' benefits, and Defendants cannot use different actuarial assumptions for plan participants who retire at the same time.  *See supra* p. 16 (discussing 26 U.S.C. § 401(a)(25)). Accordingly, final declaratory and injunctive relief is appropriate for the Class as a whole.

### c.  Plaintiffs Seek Specific Injunctive Relief

The final requirement for certifying a (b)(2) class is that Plaintiffs request specific injunctive relief in "reasonable detail."  *Yates,* 868 F.3d at 368.  In *Yates,* the Court found that plaintiffs met the specificity requirement by requesting that the court order defendants to "maintain a safe indoor apparent temperature (e.g., maintaining a heat index of 88 degrees or lower) . . . or enter other injunctive relief sufficient to protect the health and safety of the prisoners at the Pack Unit."  *Id.* at 367.  In contrast, the Fifth Circuit found that a request for an injunction requiring that defendants provide "mutually affordable healthcare" was insufficiently specific for a Rule 23(b)(2) class.  *Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521, 524–25 (5th Cir. 2007).

Plaintiffs here request specific injunctive relief:  an order requiring Defendants to recalculate benefits using the ISA applicable mortality table and interest rates used by American Airlines to calculate its pension liabilities.  Serota Decl., at 28.  Plaintiffs further request that the Court order Defendants to pay future benefits including the additional amounts shown in the recalculation.  Plaintiffs further request that Defendants provide an accounting of all amounts improperly withheld from the Class based on its improper calculations.  These requests are more than sufficiently specific to provide guidance the Defendants.

23

### C.  The Class Is Ascertainable

In addition to the requirements of Rule 23(a) and (b), a class must also be "adequately defined and clearly ascertainable."  *In re Deepwater Horizon,* 785 F.3d 1003, 1018 (5th Cir. 2015) (internal citations and quotations omitted).  While the court need not be able to identify each class member at the time that the class is certified, the class must be defined in such a way that the court can "'identify class members at some stage of the proceeding.'"  *Frey v. First Nat. Bank Sw.,* 602 F. App'x 164, 168 (5th Cir. 2015) (quoting William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed.2011)).  The key is to ensure that "class members can be ascertained by reference to objective criteria." *DeOtte v. Azar,* 332 F.R.D. 188, 196 (N.D. Tex. 2019) (internal quotations and citations omitted).  This requirement is straightforward in ERISA cases such as this one, where the identity of class members "is ascertainable from records kept with respect to the Plans and from other objective criteria. . . ." *In re 2014 Radioshack Erisa Litig.,* No. 4:14-CV-00959-O, 2016 WL 6561597, at *1 (N.D. Tex. Jan. 25, 2016).  Here too, the Plans' records will be sufficient to precisely identify each plan participant and beneficiary who began receiving pension benefits on or after December 11, 2012 as a JSA, CLA or QPSA.  Accordingly, ascertainability is satisfied.

### D.  Additional Requirements of Local Rule 23.2

Local Rule 23.2 requires Plaintiffs to address several points that are not already addressed by the Federal Rule 23 analysis above.

***Basis for Determining Any Required Jurisdictional Amount:***  Because this action is brought pursuant to ERISA, the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1).  No jurisdictional threshold is required.

***Financial Responsibility to Fund the Action:***   Proposed Co-Lead Counsel have undertaken to fund this action on behalf of the Class.  They have paid all the costs of litigation incurred to date, and commit to continuing to fund the action through trial.

***Type and Estimated Expense of Notice to Class Members:***   Plaintiffs are requesting that the class be certified under Rule 23(b)(1)(A) and 23(b)(2).  "Neither a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out." *Ned-Sthran v. Methodist Hosps. of Dallas,* No. CIV.A.3:08-CV-0072-K, 2008 WL 5420601, at *6 (N.D. Tex. Nov. 25, 2008) (citing *Langbecker v. Electronic Data Sys. Corp.,* 476 F.3d 299, 306 (5th Cir. 2007)); *see also In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 197 (5th Cir. 2010) (noting that "Rule 23 therefore does not specify any notice requirement for 23(b)(1)(B) actions beyond that required by subdivision (e) for settlement purposes.").  To the extent that the Court requires that notice be given, it can be accomplished by first-class mail, in combination with electronic mail, based on the Plans' records showing the last-known address of all plan participants and beneficiaries and their elected means of receiving Plan communications.  If notice is given prior to resolution of the case, Plaintiffs' counsel will hire a notice administrator and pay the expense.

***All arrangements for payment of Attorneys' Fees:***   Plaintiffs' counsel have been retained on a pure contingency basis, with the Court to determine the amount of any fees to be paid at the conclusion of the litigation.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify the proposed Class pursuant to Rule 23(b)(1)(A) or Rule 23(b)(2), appoint lead plaintiffs to serve as class representatives, appoint Izard, Kindall & Raabe, LLP and Bailey & Glasser LLP as co-lead counsel for the Class, and the Kendall Law Group, PLLC as local counsel.

Dated:  December 2, 2019                    Respectfully submitted,


 /s/ Joe Kendall           
Joe Kendall
Texas Bar. No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
(213) 744-3000 / (214) 744-3105 (Facsimile)
jkendall@kendalllawgroup.com


**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (admitted *pro hac vice*) Seth
R. Klein (admitted *pro hac vice*)
Mark P. Kindall (admitted *pro hac vice*)
Douglas P. Needham (admitted *pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email:  rizard@ikrlaw.com
Email:  sklein@ikrlaw.com
Email:  mkindall@ikrlaw.com
Email:  dneedham@ikrlaw.com

**BAILEY & GLASSER LLP**
Gregory Y. Porter (to be admitted *pro hac vice*)
Mark G. Boyko (to be admitted *pro hac vice*)
1054 31st Street, NW, Suite 230 Washington,
DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on all counsel of record on December 2, 2019 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

/s/ *Joe Kendall*
JOE KENDALL