**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| OLGA MARTINEZ TORRES, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Case No. 4:18-cv-00983-O |
| v. | § | |
| | § | |
| AMERICAN AIRLINES, INC., et al, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**DEFENDANTS AMERICAN AIRLINES, INC. AND THE EMPLOYEE BENEFITS**
**COMMITTEE'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**
**AND MEMORANDUM OF LAW IN SUPPORT**

Dee J. Kelly, Jr. (S.B. # 11217250)
Lars L. Berg (S.B. # 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly.2@kellyhart.com
lars.berg@kellyhart.com

Mark W. Robertson (*pro hac vice*)
(N.Y. Bar # 4508248)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061

Shannon M. Barrett (*pro hac vice*)
(D.C. Bar # 476866)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300
Fax: (202) 383-5300
sbarrett@omm.com

Wayne Jacobsen (*pro hac vice*)
(Cal. Bar # 106824)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel.: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Defendants American Airlines, Inc. and the Employee Benefits Committee*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. ...................................................................................................... 1

II.    ARGUMENT. .............................................................................................................. 3

     A.    Plaintiffs Have Not Satisfied Their Burden Of Showing They Are
              Adequate Class Representatives Because Their Interests Conflict With
              Those Of Absent Class Members. .......................................................................... 4

            1.    Plaintiffs Are Not Adequate Representatives Because The Relief
                       They Seek—Reforming The Definition Of "Actuarial
                       Equivalent"—Would Harm Some Class Members That They
                       Purport To Represent. .............................................................................. 6

            2.    Plaintiffs Are Not Adequate Representatives Because Utilizing
                       Alternative Discount Rates To Fashion Relief Would Harm Some
                       Class Members That They Purport To Represent. ................................... 10

     B.    The Fact That Plaintiffs' Claim Would Harm Some Absent Class
              Members Also Precludes Class Certification Under Rule 23(b)(1) and (2). ....... 13

III.    CONCLUSION. ......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ................................................................. 13

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 4

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ................................................................. 4

*Di Biase v. SPX Corp.*,
   No. 3:14-CV-00656-RJC-DSC, 2017 WL 4366994 (W.D.N.C. Oct. 2, 2017) ...................... 10

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ................................................................. 10

*Gen. Tel. Co. of S.W. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................. 4

*Gonzales v. City of Albuquerque*,
   No. CIV 09–0520 JB/RLP, 2010 WL 4053947 (D.N.M. Aug. 21, 2010) ...................... 14, 16

*Hansberry v. Lee*,
   311 U.S. 32 (1940) ............................................................................. 10

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ................................................................. 4, 10, 13, 14

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ................................................................. 10

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ............................................................................. 13

*Pickett v. Iowa Beef Processors*,
   209 F.3d 1276 (11th Cir. 2000) ............................................................... 5

*Regmund v. Talisman Energy USA, Inc.*,
   No. 4:16-cv-02960, 2019 WL 2863926 (S.D. Tex. July 2, 2019) ............................. 5

*Rogers v. U.S. Dep't of Hous. & Urban Dev.*,
   96 F.R.D. 149 (N.D. Cal. 1982) ............................................................... 15

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ................................................................. 4

# TABLE OF AUTHORITIES
## (Cont.)

**Page(s)**

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ........................................................... 5, 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................... 4, 13, 14

**Statutes**

26 U.S.C. § 401(a)(25) ......................................................................... 11

**Other Authorities**

Charles A. Wright, et al., 7AA Fed. Prac. & Proc. § 1773 (3d ed. 2018) .................................... 15

**Rules**

Fed. R. Civ. P. 23(a)(4) ........................................................................ 4

Fed. R. Civ. P. 23(b)(1) ....................................................................... 13

Fed. R. Civ. P. 23(b)(2) .................................................................... 13, 14

## I.      __INTRODUCTION.__

While the merits of Plaintiffs' claims are complex, the upshot is simple—they ask this Court to alter the terms of their ERISA-governed retirement plans such that their retirement benefits will increase.  But Plaintiffs seek to represent not only themselves but a class of all Plan members.  And the problem for the named Plaintiffs is that if they prevail and convince this Court to alter the terms of the Plans, *their* own retirement benefits will increase, but the retirement benefits of some other Plan members who they purport to represent will decrease. That result requires denying Plaintiffs' motion for class certification, for two reasons.  First, because the named Plaintiffs' interests conflict with those of absent class members they seek to represent, they are not adequate class representatives, and thus cannot satisfy the requirement of Rule 23(a)(4) that they "will fairly and adequately protect the interests of the class."  Second, that conflict of interest renders certification under Rule 23(b)(1) and (2)—the provisions under which Plaintiffs seek certification here—impossible.  Those provisions do not allow absent class members to opt out and thus preclude class certification when, as here, some class members would be injured if the named Plaintiffs prevailed.

Understanding why Plaintiffs are inadequate class representatives and why some class members would be harmed if Plaintiffs prevail requires a brief explanation of how retirement benefits are calculated under ERISA-governed plans.  As required by ERISA, each participant's benefit is first expressed in the form of a "single life annuity," commonly referred to as the "normal" or "basic" form of benefit.  A single life annuity is a fixed monthly payment that the individual will receive for the remainder of his or her life.  But a participant is not required to receive his or her benefit in the form of a single life annuity.  ERISA requires that participants have a choice to receive their benefit in other, "alternative" forms of annuities—for example, a joint and survivor annuity under which the participant's surviving spouse continues to receive

1

payments after the participant's death—so long as the alternative form is the "actuarial equivalent" of the single life annuity.  Central to this litigation, converting the basic single life annuity to an alternative form of benefit involves two variables—life expectancy assumptions as set forth in a mortality table, and the discount rate used to assume how quickly the value of money will increase in the future.

Plaintiffs' core contention is that the life expectancy assumptions used in the applicable Plans to calculate actuarial equivalency for alternative benefit forms are wrong.  Those assumptions are reflected in the Plans' definition of "Actuarial Equivalent," which requires the use of a particular mortality table as well as a particular discount rate.  Plaintiffs argue that the mortality table specified in the Plans is outdated because life expectancy is now longer than it was when the table in the Plans was created.  Plaintiffs further suggest that if the Plans must update their mortality tables, the discount rates must be updated, too.  The outcome of altering the definition of "Actuarial Equivalent" in this way, Plaintiffs say, will increase the value of the forms of benefits that they are allowed to choose as an alternative to the single life annuity.

While Plaintiffs' claim ultimately fails on the merits, Plaintiffs can at least bring this claim on behalf of themselves.  But they cannot represent a class of all Plan members because they have an irreconcilable conflict of interest with absent class members.  Plaintiffs ignore that the mortality table and discount rate contained in the definition of "Actuarial Equivalent" do more than simply convert a single life annuity to alternative forms of benefit.  These same actuarial assumptions are also used to calculate "Late Retirement Benefits," a benefit enhancement required for those participants who work past a certain age.  Adopting Plaintiffs' proposed new mortality table for the Plans' single definition of "Actuarial Equivalent" would *decrease* the value of the Late Retirement Benefits for certain absent class members, and would

therefore result in a *decrease* in benefits for certain absent class members overall.  This is an obvious conflict of interest between the named Plaintiffs and absent class members that on its face precludes class certification.  And that conflict of interest is further exacerbated because absent class members who would be injured cannot opt out of Plaintiffs' proposed action, which is why Rules 23(b)(1) and (2) independently preclude class certification.

Plaintiffs' expert—who wastes nearly his entire report on the merits of Plaintiffs' claims, which are irrelevant at this stage—implicitly acknowledges this problem.  In calculating the alternative forms of benefit, Plaintiffs' expert utilizes Plaintiffs' proposed new mortality table.  But in calculating Late Retirement Benefits, he *does not*—instead, he utilizes the Plans' current mortality table, the very table that Plaintiffs allege is so "antiquated" as to be entirely unlawful.  That is improper—the actuarial assumptions in the definition of "Actuarial Equivalent" cannot change depending on whether it helps or hurts Plaintiffs' efforts on the merits or in seeking class certification.  If the definition of "Actuarial Equivalent" is altered in the manner Plaintiffs seek, the result will be a reduction in benefits for certain other absent class members.  That will render Plaintiffs inadequate representatives of the proposed class in violation of Rule 23(a)(4).  And it will result in a class in which some absent class members, who cannot opt out, will be harmed, in violation of Rule 23(b)(1) and (2).

For these reasons, and as further detailed below, Plaintiffs have not and cannot satisfy their burden of demonstrating that they have satisfied the requirements of Rule 23.  The motion for class certification should thus be denied.

## II.    <u>ARGUMENT.</u>

Federal Rule of Civil Procedure 23 precludes class certification unless all the requirements of Rule 23(a), and at least one of the requirements of Rule 23(b), are met.  "The party seeking certification," moreover, "bears the burden of establishing that *all* requirements of

Rule 23 have been satisfied." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (emphasis in original) (citation omitted); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) (holding that the district court erred when "it improperly shifted the burden of proof to the defendants by adopting a presumption that the class representatives and their counsel are adequate in the absence of specific proof to the contrary"). "Recognizing the important due process concerns of both plaintiffs and defendants inherent in the certification decision, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." *Id.* "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Here, the named Plaintiffs contend that all the requirements of Rule 23(a) are satisfied, and seek to certify a class under Rule 23(b)(1) and (2). Plaintiffs' motion for class certification should be denied because the requisite "rigorous analysis" demonstrates that Plaintiffs have failed to satisfy their burden of proving that they are adequate class representatives under Rule 23(a)(4), or that they meet the requirements of Rule 23(b)(1) or (2).

### A.     Plaintiffs Have Not Satisfied Their Burden Of Showing They Are Adequate Class Representatives Because Their Interests Conflict With Those Of Absent Class Members.

Among the most important of these Rule 23 prerequisites is that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157–158 n. 13 (1982)). "Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4)." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) (citing *Valley Drug Co. v. Geneva*

*Pharm., Inc.*, 350 F.3d 1181, 1189-92 (11th Cir. 2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted"); *Regmund v. Talisman Energy USA, Inc.*, No. 4:16-cv-02960, 2019 WL 2863926, at *5 (S.D. Tex. July 2, 2019) (denying class certification where there was a high risk of intra-class conflicts of interest because, if successful, "underpaid class members would receive additional payouts, whereas the overpaid class members may be subject to Defendant's counterclaim for recoupment").  As demonstrated by these cases, class litigation is by its nature representative and a named plaintiff cannot represent someone whose interests conflict with his own—i.e., someone who would suffer if the relief the named plaintiff requests was granted.

Despite the importance of this precondition to class certification, Plaintiffs do not even legitimately attempt to demonstrate an alignment of their interests with those of the putative class members.  Their entire argument boils down to two sentences:  "Finally, the proposed Class representatives have no conflicts of interest with the other members of the Class.  Their claims rise and fall on the same facts and legal theories as all other members of the Class, and their diverse experiences further ensure that all class members will be well-represented."  (Dkt. No. 51 at 15.)  This bald proclamation offers no substantive examination of adequacy of representation and fails to address that class members have *conflicting* interests in how the legal theories are presented and resolved.  Nonetheless, the important assertion is that the named Plaintiffs "have no conflicts of interest with other members of the Class."  For class certification to be appropriate, Plaintiffs are required to demonstrate that is correct.  But as Defendants show immediately below, Plaintiffs have failed to satisfy their burden.

      1.      **Plaintiffs Are Not Adequate Representatives Because The Relief They Seek—Reforming The Definition Of "Actuarial Equivalent"—Would Harm Some Class Members That They Purport To Represent.**

Plaintiffs flunk the adequacy requirement because the relief they seek would affirmatively—and necessarily—*harm* some absent class members that they purport to represent. Plaintiffs' central complaint is the manner in which the Plans currently prescribe converting a single life annuity—the basic form in which a Plan participant's retirement benefit is first expressed—into actuarially equivalent alternative forms of benefit (such as a joint and survivor annuity).[1]  (Dkt. No. 1 ¶¶ 40-48.)  If a participant elects an alternative form of benefit, the single life annuity in which the participant's benefit is first expressed must be converted to the alternative form of benefit.  This conversion involves two basic components:  life expectancy assumptions in a mortality table, and a discount rate.  (Dkt. No. 1 ¶ 40.)  Specifically, Section 2.3 of the Plans defines the capitalized term "Actuarial Equivalent" using a 5% interest rate and the UP-1984 mortality table.  (Dkt. No. 51 at 4 and n.10-11, citing Section 2.3.)  Plaintiffs' claims focus narrowly on this use of the term "Actuarial Equivalent," and they propose that the term be "reformed" in a manner that, for any given single life annuity, would increase the life expectancy assumptions in the mortality table used in the "Actuarial Equivalent" definition, and thus purportedly increase the value of the Plans' alternative forms of benefit.  (Dkt. No. 51 at 16.)

The problem for Plaintiffs, however, is that the Plans use the term "Actuarial Equivalent" to do more than direct how to convert a single life annuity to alternative forms of benefit.  And while Plaintiffs allege that revising the definition of "Actuarial Equivalent" by adding Plaintiffs' preferred mortality tables would increase the value of Plan participants' alternative forms of

---

[1] Under Section 2.1 of each of the Plans, a participant's "Accrued Benefit" is "calculated … and payable as a Single Life Annuity… ."  (Dkt. 52-1 - Dkt. 52-13 at APP. 000023-000991.)  Under Section 9.4(a) of the Plans, the alternative forms of benefit "shall be Actuarially Equivalent to the [participant's] Single Life Annuity form of benefit…."  (*Id.*)

benefit, applying the same revised definition of "Actuarial Equivalent" to other Plan provisions will *harm* other participants (though not the named Plaintiffs).

In particular, the term "Actuarial Equivalent" is used in calculating "Late Retirement Benefits" under the Plans.  (Dkt. 52-1 - Dkt. 52-13 § 7.3 at APP. 000023-000991.)[2]  Like social security, which pays increased monthly benefits to individuals who commence receiving benefits later than their full retirement age, the Plans provide for increased monthly benefits for late retirees (i.e., someone who retires after the April 1 following the date he or she reaches age 70½).[3]  Under Section 7.3(a)(ii) of the Plans, that compensation is provided in the form of a "Late Retirement Benefit," which is the "*Actuarial Equivalent* of the value of such Member's benefit as of the last date in which the Member accrued a benefit."  *Id.*  The logic behind this is straightforward.  If a participant retires at, say, 75 years of age and is expected to live until 85, the participant would be expected to receive only half as many monthly retirement payments as if he or she had retired at a normal retirement age of 65.  APP0013-0014 (¶ 27).  An increase in the participant's monthly benefit amount is thus warranted to offset the reduction in the number of benefit payments the participant is expected to receive.  APP0014-0015 (¶ 29).  Notably, this increase is applied *before* a participant's benefit is converted from a single life annuity to any other form of benefit.  APP0012 (¶ 24).  Thus, the Late Retirement Benefit feature affects the amount a late retiree receives regardless of the form of benefit the late retiree elects.  APP0020 (¶ 39).

---

[2] In conjunction with this filing, American is filing an Appendix. American cites to that Appendix as "APP".  Citations to "APP." preceded by a docket number refer to Plaintiffs' Appendix filed on December 2, 2019.
[3] Increased benefits also are provided to participants who retire after age 65 but before age 70½ if they are not provided a notice specified in the Plans.  The reason for the increase (for social security as well as the Plans) is that a late retiree will draw benefits for a shorter period, so each monthly payment is increased to compensate.

If "Actuarial Equivalent" is modified by incorporating a mortality table with longer life expectancies as Plaintiffs propose, then the amount of a Late Retirement Benefit would *decrease*, thus *reducing* the overall benefits a participant receives.  APP0013-0015 (¶¶ 26-29).  Using the example above, if the participant retiring at age 75 were expected to live until 87 instead of 85, then the participant would be expected to receive more than half as many monthly benefit payments as if he or she had retired at 65.  Thus, a smaller increase in the participant's monthly benefit payments would be necessary to make the participant's benefits actuarially equivalent to what he or she would have made on an earlier basis.  APP0013-0015 (¶¶ 27-29).  As Defendants' expert, Jack Abraham, demonstrates in his report, this effect of lowering the Late Retirement Benefit would in some circumstances outweigh any gain a participant receives from assuming longer life expectancies in converting the participant's benefit from a single life annuity to another form of benefit.  APP0018 (¶ 34).[4]  Thus, if the definition of "Actuarial Equivalent" were "reformed" in the manner that Plaintiffs propose, putative class members in those circumstances would receive *lower* monthly benefits than they do under the Plan's current terms.

Plaintiffs ignore this problem entirely.  Through their expert, Mitchell Serota, Plaintiffs propose using their new, preferred mortality tables to calculate the "Actuarial Equivalent" of a single life annuity under Section 9.4(a) of the Plans.  But—without expressly acknowledging their inconsistency—they would retain the *existing* mortality tables that appear in the Plans'

---

[4] At the same time, modifying the definition of "Actuarial Equivalent" in the manner Plaintiffs suggest would reduce the monthly benefit amounts received by *every* participant who retired after April 1 following the year in which the participant attained 70.5 years of age and selected a life annuity, and any active employee currently past the April 1 following the year in which the participant attained 70.5 years of age who will select a life annuity.  Because there is no conversion of those participants' benefit entitlements to another form of benefit, they would only experience the effect of a reduction in the amount of their Late Retirement Benefits with no offsetting gain.  APP0014 (n.25).

current definition of "Actuarial Equivalent" when determining a participant's Late Retirement

Benefit.  When calculating benefits for Fernando Posso—the only named Plaintiff entitled to a

Late Retirement Benefit—Serota utilizes a mortality table published by the IRS to calculate the

actuarial equivalents of a single life annuity (Dkt. No. 52-25 at APP. 001909), but continues to

use the Plans' current Actuarial Equivalent factors, including the Plans' current mortality table,

when calculating the same participant's Late Retirement Benefits.  APP0011-0013 (¶¶ 23-26).

And he does so even while calling the latter mortality table "antiquated" when applied to

determining actuarial equivalents to the single life annuity form of benefit.  *Id.*

Whether this inconsistency is the result of intentional sleight of hand or carelessness, the

bottom line is that, obviously, the same defined Plan term cannot mean two different things in

different parts of the Plan.  Indeed, even Plaintiffs acknowledge that ERISA requires that plans

determine actuarial equivalence using factors that are "consistently applied."  (Dkt. No. 51 at 9.)

The only possible basis to reform the Plan to fix an allegedly outdated mortality table under one

section of the Plan, while maintaining that same allegedly outdated mortality table in a different

section of the Plan, would be to aid the named Plaintiffs' efforts to certify a class—a facially

improper basis for Plan reformation.  For Posso, consistent application of his and the other

named Plaintiffs' preferred assumptions would result in him receiving a higher monthly benefit

than he does today.  APP0018 (¶ 34).  But it would reduce the benefits of some absent class

members that Plaintiffs seek to represent.  APP0018-0020 (¶¶ 34-39).  For example, any Plan

participant born before November 1, 1941; retired on or after July 1, 2015; and, elected a 50%

joint and survivor annuity would suffer a reduction in benefits under the consistent application of

the factors set forth in Serota's declaration.  APP0020 (¶ 38).  And, there are in fact Plan

participants who meet those criteria and thus would suffer a reduction in benefits.  APP0034

(¶ 3).

As the Supreme Court held long ago, and remains just as true today, individuals who want a provision of law enforced cannot represent a class that includes individuals who do not. *Hansberry v. Lee*, 311 U.S. 32, 44 (1940). After all, adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees," *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by*, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), and there is an irreconcilable antagonism between the named Plaintiffs and absent class members. Because Plaintiffs have not and cannot satisfy their burden of demonstrating that they are adequate class representatives under these facts, Plaintiffs' Motion for class certification must be denied. *See, e.g.*, *Langbecker*, 476 F.3d at 315 (vacating grant of class certification where plaintiffs' theory would benefit some class members but harm others because, *inter alia*, the challenged stock fund "cannot be partially shut down for the litigating Plaintiffs and remain open for absent class members who desire this investment option"); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003) ("To our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." (collecting cases)); *Di Biase v. SPX Corp.*, No. 3:14-CV-00656-RJC-DSC, 2017 WL 4366994, at *5 (W.D.N.C. Oct. 2, 2017) (denying class certification where absent class members where the challenged conduct "may actually benefit other unnamed members of the class").

## 2. Plaintiffs Are Not Adequate Representatives Because Utilizing Alternative Discount Rates To Fashion Relief Would Harm Some Class Members That They Purport To Represent.

There is a second, independent reason why Plaintiffs are inadequate class representatives. As Serota tacitly acknowledged in his report, "updating" the Plans' mortality rate assumptions

would also require updating the Plans' discount rate assumption—there would obviously be no basis for concluding that one aspect of actuarial equivalency must be modernized as a matter of law while the other aspect can remain, in Plaintiffs' words, "antiquated." (Dkt. No. 52-25 at APP. 001909-001911) (adopting a different discount rate than that specified in the Plan and explaining, that "Discount rates have fluctuated in the course of the last 40 years. Twenty years ago, long-term interest rates were considerably higher than they are now.") Serota suggested that it would be reasonable to use the discount rates American reported for different purposes in its 10-K reports, and he used those reported rates to recalculate the named Plaintiffs' benefits. (Dkt. No. 52-25 at APP. 001910-001911.)[5] But Plaintiffs' theory does not compel any particular rate that should be adopted under their theory, and Serota acknowledges that, under Plaintiffs' theory of the case, there could be different reasonable assumptions. (Dkt. No. 52-25 at APP. 001891-001892); APP0025 (¶51).

The fact that Plaintiffs will be presented with a range of discount rates for which to advocate provides an additional reason why they are inadequate class representatives. That is because higher or lower discount rates affect the value of different forms of benefit differently. For example, all else being equal, the use of a lower discount rate would ***reduce*** the benefits for

---

[5] As Abraham explains in his report, the Plans could not have based the discount rates used to calculate benefits on the discount rates reported in American's 10-K reports as Serota asserts. For example, such use would be impracticable. APP0024 (¶ 49). And it would likely violate Internal Revenue Code § 401(a)(25), which requires that the assumptions used to calculate benefits be set forth in the plan document in a manner that precludes employer discretion. APP0022-0023 (¶¶ 46-47); 26 U.S.C. § 401(a)(25).

proposed class members who selected a joint and survivor annuity.[6]  In contrast, a lower rate would ***increase*** benefits for proposed class members who selected a certain and life annuity. APP0025 (¶ 52).[7]  Thus, different members of the proposed class have conflicting interests as to the discount rate that Plaintiffs and their expert advocate—as Serota acknowledges, a higher or lower rate would increase benefits for some putative class members while reducing the benefits to other putative class members, depending on the form of benefit they have selected.  (Dkt. No. 52-25 at APP. 001903.)

This additional, inherent conflict also precludes a finding of adequate representation, and thus precludes class certification.  If Plaintiffs succeed in their attempt to reform the definition of "Actuarial Equivalent," they will have to advocate not only for the proper mortality table but also for the proper discount rate.  And they cannot advocate any given rate without advantaging some putative class members to the detriment of others.  APP0018-0020 (¶¶ 34-40).[8]  This is a clear and irreconcilable conflict—certainly, no one would ever suggest, for example, that a debtor seeking a decreased interest rate could represent a class of debtors *and creditors*, since the debtor's interest in a lower rate flatly conflict with the creditor's interest in a higher rate.  The

---

[6] Dkt. No. 52-25 at APP. 001903 ("Joint and Survivor Annuity payments are made over two lives and therefore extend further into the future than they would if just one life was under consideration.  Higher interest rates mean that these payments are more heavily discounted (less valuable) and therefore the "insurance" charge is lower -- i.e., a higher interest rate partially offsets the effect of older mortality assumptions.  Conversely, **lower interest rates mean** the payments are not discounted as much, **so the cost of insuring** the extended benefits from adding the second life **is greater**.") (emphasis added).

[7] *Id.*  ("For a CLA, the payments are front-loaded relative to SLA (except when the certain period is very long).  Therefore, payments under this form are more valuable (relative to the SLA) when interest rates are higher and so the charge for insurance is higher which in turn drives down the Conversion Factor.  **If the discount rates are lower, the charge for insurance is lower,** meaning the Conversion Factor increases.") (emphasis added).

[8] Indeed, the named Plaintiffs might be conflicted among *themselves* about whether to advocate for a relatively higher or lower interest rate, depending on which alternative form of benefit each would individually prefer.

same is true here—whichever discount rate the Plaintiffs seek will disadvantage some class members relative to others. This clear conflict is irreconcilable and renders Plaintiffs inadequate class representatives as a matter of law. *See Langbecker*, 476 F.3d at 315 (vacating grant of class certification where maximum recovery for absent class members depended on which date counsel chose as the date on which the stock fund became an imprudent investment).

> **B.     The Fact That Plaintiffs' Claim Would Harm Some Absent Class Members Also Precludes Class Certification Under Rule 23(b)(1) and (2).**

Plaintiffs also bear the burden of proving that their proposed class satisfies one of the subsections of Rule 23(b). Here, Plaintiffs seek to proceed under Rules 23(b)(1) and (2), which authorize equitable-relief classes in certain circumstances. Because classes under Rules 23(b)(1) and (2) are "mandatory" in that they do not give absent class members notice or the right to opt out, the circumstances under which such classes are permissible are narrowly circumscribed. *See Dukes*, 564 U.S. at 361; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n.13 (1999).

In particular, Rule 23(b)(1) authorizes district courts to certify classes seeking equitable relief where the prosecution of separate actions by the individual class members would lead to "incompatible standards of conduct for the party opposing the class" or decisions that would impede individual class members' "ability to protect their interests." Fed. R. Civ. P. 23(b)(1). In other words, Rule 23(b)(1) applies where "actions by or against a class provide a ready and fair means of achieving unitary adjudication." *Id.*, note to 1966 amendment; *see also Alison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). By contrast, Rule 23(b)(2) applies only where the relief sought "is appropriate respecting the class a whole." Fed. R. Civ. P. 23(b)(2); *see also Alison*, 151 F.3d at 412-13. In either case, the touchstone of the analysis must be whether the claims and theories presented are such that absent class members' interests are so strongly protected that they need not be given notice that their claims are being adjudicated or

13

the right to opt out.  *Id*.

The fact that Plaintiffs' claim, if successful, would harm some class members means that Plaintiffs fail to satisfy the elements of Rules 23(b)(1) or (2), which is an independent basis to deny their motion.  Because Plaintiffs and their expert do not acknowledge that this problem exists, they have also undertaken no effort to demonstrate the number of absent class members who would actually benefit (instead of be harmed) by the relief they seek.  Of course, tallying up Plan members who would and would not be harmed would not change anything for certification purposes, because the Court cannot certify a no-notice, mandatory class that includes even one class member who would be harmed by a binding judgment.  It would be fundamentally unfair— and inconsistent with Rule 23—to bind some absent class members without notice to a judgment that harmed their interests.

Rule 23(b)(2), for instance, applies only "when a single injunction or declaratory judgment would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  The Supreme Court has thus explained that "Rule 23(b)(2) does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  *Id.*  It follows *a fortiori* that Rule 23(b)(2) does not authorize class certification where some of the absent class members would have to be spared from any injunction or declaration just to avoid being harmed.  Obviously, equitable relief in those circumstances is not "appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see Langbecker*, 476 F.3d at 315 (doubting propriety of 23(b)(2) certification where some absent class members would be harmed by the relief sought by named plaintiffs); *Gonzales v. City of Albuquerque*, No. CIV 09–0520 JB/RLP, 2010 WL 4053947, at *18 (D.N.M. Aug. 21, 2010) ("The pecuniary conflict of interest between the Plaintiffs and current employees renders the

14

injunctive relief inappropriate for all current employees."); *cf. Rogers v. U.S. Dep't of Hous. & Urban Dev.*, 96 F.R.D. 149, 151 (N.D. Cal. 1982) (noting "the court's heightened obligation to protect the interest of absent class members in class actions brought under Rule 23(b)(2)" in finding that a conflict of interest defeated adequacy).[9]

The same is necessarily true under Rule 23(b)(1). Rule 23(b)(1)(A) class actions are meant to ensure that Defendants are not subject to inconsistent standards of conduct, but the only way to avoid harming absent class members would be to subject American to inconsistent standards depending on the class member. Even if it were in theory possible to reform the terms of the Plans only as to some Plan participants, *but see supra* note 9, that sort of remedy would preclude Rule 23(b)(1) certification. And there is no risk that certain absent class members would bring suit absent class certification because they are better off in the world that exists today. *See* Charles A. Wright, et al., 7AA Fed. Prac. & Proc. § 1773 (3d ed. 2018) ("there obviously must be a risk that separate actions will in fact be brought if a class action is not permitted").

Certifying Plaintiffs' class would also turn Rule 23(b)(1)(B) on its head. That subsection is meant to apply where adjudications in individual suits would "substantially impair or impede [individual class members'] ability to protect their interests"—hence, the traditional application of Rule 23(b)(1)(B) to "limited funds," which would be depleted by successful individual actions. No such interest is present here. Just the opposite: it is classwide adjudication itself that

---

[9] This is not a problem that can be solved by defining the class to exclude any class member whose interests would be harmed. Plaintiffs seek reformation of the Plans that obviously govern *every* Plan participant. Thus, if Plaintiffs prevail and the Plans are reformed, then those reformed Plans will continue to govern every Plan participant, including those participants who will be affirmatively harmed by this litigation. Thus, no Plan participant *could* be spared from the declaration or injunction Plaintiffs seek because the Plan terms apply equally to all Plan participants, and any reformation of the Plan would thus have to apply equally to all of them.

would substantially impair or impede individual class members' ability to protect their interests by subjecting them to binding adjudication, with no notice, that will necessarily harm some of them. *See Gonzales*, 2010 WL 4053947, at *18 (finding a class conflict precluded certification under Rule 23(b)(1)).

## III.    <u>CONCLUSION.</u>

Conflicts between putative class members preclude class certification under Rule 23(a)(4) and Rule 23(b)(1) and (2).  Accordingly, Plaintiffs' motion for class certification should be denied.


Respectfully submitted,

Dated:  January 17, 2020

/s/ Mark W. Robertson

Shannon M. Barrett (*pro hac vice*)
(D.C. Bar # 476866)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel.: (202) 383-5300
Fax: (202) 383-5300
sbarrett@omm.com

Wayne Jacobsen (*pro hac vice*)
(Cal. Bar # 106824)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel.: (949) 823-6900
Fax: (949) 823-6994

Mark W. Robertson (*pro hac vice*)
(N.Y. Bar # 4508248)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061

Dee J. Kelly, Jr. (S.B. # 11217250)
Lars L. Berg (S.B. # 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly.2@kellyhart.com
lars.berg@kellyhart.com


*Attorneys for Defendants American Airlines, Inc. and the Employee Benefits Committee*

**CERTIFICATE OF SERVICE**

On January 17, 2020, a true and correct copy of the foregoing document was served upon all persons who have requested notice and service of pleadings in this case via the Court's CM/ECF system.

                                                          */s/ Mark W. Robertson*
                                                          Mark W. Robertson