**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| Olga Martinez Torres, Linda Davis, Angel Alberio and Fernando Posso, on behalf of themselves and all others similarly situated, | **Civil Action No.: 4:18-cv-00983-O** |
| Plaintiffs, | |
| vs. | |
| American Airlines, Inc., the Employee Benefits Committee and John/Jane Does 1-5 | January 31, 2020 |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

I.   Plaintiffs are Adequate Class Representatives ......................................................... 1

    A.   No Class Members Could Be Harmed By the Relief Plaintiffs Seek ...................... 1

        1.   The Plans Use Different Actuarial Assumptions for Early and Late
            Retirement ................................................................................................ 4

        2.   All Class Members Are Injured by Defendants' Use of Outdated
            Actuarial  Assumptions for Horizontal Conversions .................................. 5

    B.   Plaintiffs' Use of a Reasonable Discount Rate Likewise Creates No Class Conflict .. 8

II.  Defendants' Alleged "Conflict" Underscores Why Certification is Appropriate under
    Rules 23(b)(1) and 23(b)(2) ..................................................................................... 9

Defendants' limited objection to class certification effectively concedes that Plaintiffs have established numerosity, commonality and typicality. Even Defendants' challenge to adequacy under 23(a)(3) and to certifiability under 23(b), is limited to suggesting that Plaintiff's request to reform the Plans creates conflicts between Class members. Defendants are wrong about the conflict, and the Class should be certified.[1]

## I.    Plaintiffs are Adequate Class Representatives

Defendants make two arguments to challenge Plaintiffs' adequacy: (1) "some" hypothetical, unidentified, absent class members who worked until they were over 74 years old would be harmed; and (2) Class members receiving a joint and survivor annuity ("JSA") would be better off with a higher discount rate, while Class members receiving a certain and life annuity ("CLA") would benefit from a lower discount rate. Neither argument has merit.

### A.    No Class Members Could Be Harmed By the Relief Plaintiffs Seek

Defendants' argument that Plaintiffs' reformation claim in Count II could harm some Class members is legally and factually incorrect. The proposed Class only includes persons who are vested and already receiving their accrued benefits. As a matter of law, these benefits cannot be reduced through plan reformation. 29 U.S.C. § 1054(g). Accordingly, no Class Members' benefits can be reduced; at worst, a few might not be increased.[2] "[C]lass certification is not precluded

---

[1] Plaintiffs only seek reformation under Count II of the Complaint. Counts I and III, in contrast, seek a variety of equitable remedies other than reformation which primarily concern the re-calculation of benefits consistent with ERISA and disgorgement of amounts improperly withheld. These remedies do not require reforming or otherwise changing the Plans. Therefore, Defendants' argument is irrelevant to Counts I and III. Since there has been no objection to certification of those claims, the Court should certify them. *See, e.g., In re Enron Corp.*, 2006 WL 1662596 (S.D. Tex. June 7, 2006) (certifying classes for three of five alleged counts).

[2] Although they are not part of the proposed Class and should not factor into a conflict analysis, plan participants who have not retired would not be harmed by reformation either. Plan Amendments that might otherwise decrease accrued benefits are permissible so long as they contain a provision ensuring that participants will receive the greater of: (a) their accrued benefit

simply because a class may include persons who may not have been injured by the defendant's conduct." *In re Deepwater Horizon*, 739 F.3d 790, 813 (5th Cir. 2014) (quotations omitted).

Defendants' argument is on even weaker ground factually. Defendants argue that "in some circumstances" some plan participants who retired sometime after their 74th birthday would receive lower benefits if the plans were reformed under Count II. Def. Br. at 8. But Defendants do not state how many participants might be affected or provide any details concerning their circumstances. Indeed, Defendants only allege that "there are participants in the Plans who were born before November 1, 1941; retired on or after July 1, 2015; and elected a 50% joint and survivor annuity." Defs.' Appendix at Tab B, Decl. of Jane Urbis at ¶ 3. Such "'allegations of potential conflict are very speculative and hypothetical'" and should not preclude class certification. *Serna v. Transp. Workers Union of Am., AFL-CIO,* 2014 WL 7721824, at *12 (N.D. Tex. Dec. 3, 2014) (quoting *Lee v. Am. Airlines, Inc.,* 2002 WL 31230803, at *8 (N.D. Tex. Sept. 30, 2002)). Importantly, Defendants specifically **refused** to produce participant data that would permit evaluation of the arguments they now present, objecting to Plaintiffs' discovery request for participants' benefit calculation information because it **was not relevant to class certification.**[3] Defendants cannot flip-flop and oppose class certification based on information they previously asserted was irrelevant.

_____

calculated under the amended plan; or (b) their accrued benefit as of the date of plan amendment. 26 C.F.R. § 1.411(d)–3(b)(4), Example 1 (noting that an otherwise impermissible amendment would not violate the anti-cutback rule if it "included a provision under which M's straight life annuity payable at any age could be not be less than what it was immediately before the amendment."). "Greater of" provisions are common when plans are amended, and Defendants do not explain why a reformation order could not include one if it were needed.

[3] *See* Defendants' Obj. to Plaintiffs' Second Request for Production, at 5 (Reply App. at APX009) ("To the extent this Request seeks documents regarding Participants and/or Beneficiaries other than the named Plaintiffs, Defendants object on the grounds that any request for the information sought is premature prior to any certification of the class.").

Finally, Defendants' argument fundamentally misstates Plaintiffs' claims. As Defendants acknowledge (Def. Br. at 7), calculating a JSA for a participant who takes late retirement involves two steps. First, the "Normal Retirement Benefit" at the "Normal Retirement Age" ("NRA") — here, a single life annuity ("SLA") at age 65 — is converted to an actuarially equivalent SLA at the retiree's benefit commencement date ("BCD") by increasing the benefit to offset reductions in the participant's expected number of payments. *Id.* Second, the Plans convert the SLA at BCD into an actuarially equivalent JSA at BCD. *See id.* (conversion of the age 65 SLA to the late retirement SLA is done "***before*** a participant's benefit is converted from a single life annuity to any other form of benefit."). The first step can be thought of as a ***vertical*** conversion (converting an SLA available at NRA to the ***same benefit*** taken at a ***different time***), the second as a ***horizontal*** conversion (converting the SLA available at a particular date to ***different forms*** of benefit available on the ***same date***). While both vertical and horizontal conversions can give rise to ERISA claims, Plaintiffs here only challenge the horizontal conversion.

Defendants' argument that some Class Members would be harmed by reforming the Plan (*Id.* at 8-9) requires (1) changing the Plans with respect to ***both*** the "vertical" ***and*** the "horizontal" conversions; (2) using the same assumptions for both vertical and horizontal conversions; and (3) aggregating the results of these conversions to show harm. Defendants are wrong in all respects.

ERISA does not require pension plans to use the same actuarial assumptions for the vertical and horizontal conversions, and the Plans here do not do so. To the contrary, the Plans[4] subsidize both early and late retirement (the vertical conversion), and use different methods and assumptions

---

[4] Defendants use the Transport Workers Plan in which Plaintiff Posso participates as an example and Plaintiffs will do the same. *See, e.g.,* Defendants' Appendix [ECF 58] at 11, fn 8; 9; 12, fn 12; 15, fn 20; and 24, fn 31. The 2014 Plan Document Transport Workers Plan was filed with the Court in the Appendix to Plaintiffs' Motion for Class Certification ("CC App.") at pages AA2475-2638. Accordingly, all references to the "Plan" refer to the Transport Workers Plan.

to accomplish the subsidies.  Critically, such subsidies are not prohibited by ERISA, and Plaintiffs ***do not challenge them.***  Instead, Plaintiffs are challenging only the horizontal conversion.  The Plans can be reformed to address the horizontal violation ***without*** changing the  formulae for vertical conversions, and as Dr. Serota testified (without contradiction from Defendants), ***all*** members of the proposed Class would be better off if the Plans used updated actuarial assumptions for the horizontal conversions.  Serota Report, CC App. at 1911-14.

### 1. The Plans Use Different Actuarial Assumptions for Early and Late Retirement

The Plan has different methodologies for converting the SLA available at age 65 to an SLA available to either early or late retirees.[5]  For early retirees, the Plan has several different methods for calculating their SLA, depending on factors such as whether they worked for American after March 1, 2001, their years of service, and their age at retirement.  Plan, § 7.2, CC App. at AA2545-47.  For example, participants who retire at or after age 62 with at least 10 years of service receive their full accrued benefit with ***no*** reduction, providing a subsidized benefit that is greater than the actuarial equivalent of the SLA at age 65.  Plan, § 7.2(c), CC App. at AA2546; Serota Reply Decl. at ¶ 20, Reply App. at APX020.[6]  For other early retirees, such as those who retire after age 55 with 15 years of service, the retiree's SLA is reduced by a fixed percentage, .25% per month.  Plan, § 7.2(a)(i), CC App. at AA2545-46.

---

[5] The Plan sets the NRA as age 65. Plan § 2.66, CC App. at AA2511. The accrued benefit for participants who retire after age 65 is the SLA they are entitled to receive on the date they terminate their employment. *Id.,* §§ 2.1, 2.93, CC App. at AA2485, AA2519. Accordingly, a participant who retires after age 65 has an accrued benefit that includes any late retirement benefit calculated under the Plan.  *Id.,* §§ 2.1, 7.3, CC App. at AA2485, AA2547. The retiree's Benefit Commencement Date ("BCD") is the first day of the month following the date the retiree is entitled to begin receiving benefits. *Id.,* § 2.12, CC App. at AA2488.

[6] Rev Rul. 79-90, 1979 WL 51556, provides that a plan must specify the actuarial assumptions used to calculate actuarial equivalence. It can do so either by stating the assumptions or the conversion factor which is the product of the assumptions.

In contrast, the Plan uses several methodologies to calculate late retirees' SLAs. Rather than use a fixed reduction, the Plan calculates late retirees' SLA at BCD using the same actuarial assumptions (the UP-84 mortality table and a 5% interest rate) used for calculating alternative forms of benefit.  Plan § 7.3(a)(ii), CC App. at AA2547.  Additionally, the Plan provides that if the participant works past age 70 ½, his benefit is actuarially increased in an amount that satisfies Section 401(a)(9) of the Internal Revenue Code.  Plan § 7.3 (c), CC App. at AA2547.[7]

Just as the Plan subsidizes early retirement by not making actuarial reductions to the SLA starting at age 62, the Plan provides a more generous late retirement SLA by using a 5% interest rate and the UP-1984 mortality table to convert the age 65 SLA to the SLA available as of the retiree's BCD.  Because ERISA does not prohibit plans from paying early or late retirement benefits that are *more* generous than the actuarial equivalent of the SLA available at NRA, Plaintiffs have not challenged Defendants' calculation of the SLAs available to either early or late retirees (the "vertical" component).  Indeed, the Class is defined to *exclude* persons who receive benefits in the form of an SLA.  Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, ECF 51, at 4 (description of proposed class).

### 2.  All Class Members Are Injured by Defendants' Use of Outdated Actuarial Assumptions for Horizontal Conversions

Plaintiffs' horizontal claim is that plan participants who are receiving a JSA or CLA receive a monthly benefit less than the actuarial equivalent of the benefit they would have received if they

---

[7] 26 U.S.C. 401(a)(9) requires distributions to be made either when the employee retires or reaches age 70 ½. 26 U.S.C. 401 (a)(9)(C)(i). If the employee works after age 70 ½, the accrued benefit must be increased to account for the period after age 70 ½. Benefits paid after age 70 ½ "*must be no less than*" the actuarial equivalent of the benefit that would have been paid had benefits commenced at age 70 ½.  26 C.F.R §401(a)(9)-6 Q and A 8.  The Plan provides that this actuarial increase is "generally" the same as the actuarial increase required under 26 U.S. 411(c)(2)(3) (discussed *infra* at ftn. 8), to reflect the delay in payments after age 65. Plan § 7.3 (c), CC App. at AA2547.

had selected the SLA available ***on the date they began receiving benefits***.[8]  Consistent with this theory of liability, Dr. Serota demonstrated (using the named plaintiffs as examples) a standard formula for calculating the difference between what each class member receives, and what they would receive if reasonable actuarial assumptions were used to convert the SLA available ***at the time they commenced receiving benefits*** to the form of benefit they selected.  *See, e.g.,* Serota Report, CC App. at AA1911-14.  Dr. Serota also concluded that "anyone who elected a JSA, QPSA or CLA from 2012 to the present would have received a larger monthly benefit if reasonable actuarial assumptions had been employed."  *Id.* at AA1911.

Nothing in the Abraham Report, or in Defendants' submission, contradicts Dr. Serota's finding, because Defendants wrongly analyzed whether benefits were actuarially equivalent to the SLA participants could have received ***at age 65.***  But Plaintiffs do not challenge Defendants' subsidies for late retirement SLAs, nor do Plaintiffs seek to stop such subsidies.  Plaintiffs seek, among other related relief, a declaration that "the Plans fail to properly calculate and pay QJSAs, QOSAs and QPSAs that are actuarially equivalent to [SLAs]," an order "reforming the Plans to

---

[8] As set forth in the Complaint, ERISA requires that JSAs be "actuarially equivalent" to an SLA, ERISA §§ 205(d)(1)(B) and (2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B) and (2)(A)(ii).  Compl., ECF No. 1, at ¶¶ 4, 23 and 24.  Applicable Treasury Regulations provide that this actuarial equivalence be based on "reasonable actuarial factors."  26 C.F.R. 1.401(a)-11(b)(2).  ERISA further requires that qualified pre-retirement survivor annuities ("QPSAs") be equivalent to the qualified JSA.  *Id.,* ¶ 25.  And, applicable to all class members, regardless of whether they took JSAs, QPSAs, or CLAs, Section 203(a) of ERISA, 29 U.S.C. § 1053(a), provides that an employee's right to his or her vested retirement benefits is non-forfeitable.  The Treasury regulation for the Tax Code provision corresponding to ERISA § 203 (26 U.S.C. § 411), states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."  26 C.F.R. § 1.411(a)-4(a).  Compl., ECF 1, at ¶ 29.  In contrast, a vertical claim would rely on 26 U.S.C. 411 (c)(2)(3), which provides that if the accrued benefit is to be determined as an amount other than an annual benefit commencing at NRA, then the accrued benefit shall be the actuarial equivalent of a benefit commencing at NRA. Here, since the accrued benefit for certain forms of late retirement benefits is determined upon late retirement, not NRA, this requires that the late retirement accrued benefit be at least the actuarial equivalent of an accrued benefit commencing at NRA.  Plaintiffs are not claiming that this vertical requirement has not been satisfied.

bring them into compliance with ERISA with respect to calculation of actuarially equivalent QJSAs, QOSAs and QPSAs," and an order requiring American "to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement." Compl., ECF 1, at ¶ 22.

Although the Plan presently uses the same actuarial assumptions for one of the "vertical" calculations as it uses to calculate the actuarial equivalence of optional forms of benefit, there is no legal requirement that the Plan do so.[9]  Indeed, as discussed above, if such a requirement existed the Plan would violate it because the Plan uses multiple different ways to calculate early (and late) retirement benefits that are different from the actuarial assumptions it uses to calculate optional benefit forms.  Furthermore, in its definition of "actuarial equivalence," the Plan provides different interest rate and mortality assumptions depending on whether the calculation involves an SLA, a lump sum benefit or a maximum benefit.  Plan, Sec. 2.3(a) and (b), CC App. at AA2485-87.  Thus, reformation of the Plan to address Plaintiffs' purely horizontal claim does ***not*** require reforming how the Plan calculates early or late retirement SLAs.[10]  Defendants' contrary contention is a counterfactual and contra-legal effort to manufacture an interclass conflict where none exists.

---

[9] Defendants rely on 26 C.F.R. 1.401(a)-11(b)(2), which states that "a qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, any optional form of life annuity offered under the plan," based on "consistently applied reasonable actuarial factors." Def. Br. at 9. This Regulation is yet another basis of the horizontal claim; it is satisfied by using the same (reasonable) actuarial assumptions to calculate both sides of the indicated equation — that is, the present value of both the SLA and the QJSA on the benefit commencement date. Nothing in 26 C.F.R. 1.401(a)-11(b)(2) requires that every calculation of actuarial equivalence in a plan use the ***same*** actuarial assumptions, nor does it have anything to do with conversion of an SLA at normal retirement to an early or late retirement SLA, which is governed instead by 26 U.S.C. 411(c)(2)(3).

[10] Even if the requested relief ***did*** require reformation of Section 9.4(a) — which it manifestly does not — plan-wide corrective action does not create intra-class conflict. "[N]o class member is entitled to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants as a whole, even if those breaches may have provided an individual benefit to a particular [participant]." *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, *8 (M.D.N.C. Apr. 13, 2018); *see also, J.D. v. Azar*, 925 F.3d 1291, 1317 (D.C. Cir. 2019) (quoting Newberg on Class Actions).  Nor could Defendants manufacture a conflict by arguing that they ***would*** eliminate

7

**B. Plaintiffs' Use of a Reasonable Discount Rate Likewise Creates No Class Conflict**

Defendants' argument that the choice of interest rates creates an impermissible class conflict fares no better. The argument is premised on the assumption that (a) different interest rate assumptions could be "reasonable"; and (b) all else being equal, Class members who selected a JSA do better with a higher interest rate assumption, while class members who selected a CLA will do better with a lower interest rate assumption. Defs. Br. at 11-12. As discussed in Dr. Serota's reply declaration, however, Defendants overstate the range of interest rate assumptions that could be considered "reasonable" and the impact such differences could have on damages that might be awarded to the Class. For example, Dr. Serota compares the percentage of benefits a 70-year old retiree who took a CLA could expect to recover if modern mortality assumptions were used in combination with the three most reasonable interest rate assumptions. For each year during the Class Period, the *largest* difference is .03% — for example, a retiree will receive an increase in his monthly benefits of either 11.83% or 11.86%. Serota Reply, ¶ 38, Reply App. at APX027. Conflicts must be material to defeat a finding of adequacy, and "'the existence of minor conflicts alone will not defeat a party's claim to class certification.'" *In re Deepwater Horizon,* 739 F.3d at 814 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003).[11]

---

their late retirement subsidy by changing the actuarial assumptions to match those Plaintiffs are requesting for the horizontal conversion process. Defendants' possible future actions cannot create a conflict that defeats adequacy. *Truzo v. Citi Mortgage*, 2018 WL 741422, *13 (W.D. Penn. Feb. 7, 2018) (citing cases). Moreover, even if Defendants subsequently chose to amend the plan to eliminate their late retirement subsidy, that would not affect *class members,* because as discussed above accrued benefits cannot be reduced by amendment. 29 U.S.C. § 1054(g). Thus, there is no conflict between Plaintiffs and *any* member of the Class.

[11] Nor does Defendants' sole authority on this point support their position. Defendants rely exclusively on *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007) for, among other things, the notion that intraclass conflicts may negate adequacy under Rule 23(a)(4). 476 F.3d at 315. *Langbecker* concerned the prudence of offering EDS stock in a 401(k) plan. Much

Even if the putative conflict were "fundamental," and it is not, class certification is proper where sub-classes can be created. *In re BP p.l.c. Sec. Litig.,* No. 10-MD-2185, 2013 WL 6388408, at *11 (S.D. Tex. Dec. 6, 2013); *In re Oil Spill by Oil Rig Deepwater Horizon,* 295 F.R.D. 112, 140 (E.D. La. 2013). While Plaintiffs do not believe that choice of interest rates for a damages calculation creates any such "fundamental" conflict here, the Court could create a CLA subclass an appoint Mr. Posso to represent it.

## II.    Defendants' Alleged "Conflict" Underscores Why Certification is Appropriate Under Rules 23(b)(1) and 23(b)(2)

Defendants' only arguments against certification under Rules 23(b)(1) and (2) depend on the same non-existent conflicts discussed above. Def. Br. at 13-16. Even taken at face value, however, Defendants' arguments only demonstrate why a (b)(1) or (b)(2) class is appropriate.

Defendants acknowledge that reforming the Plans as Plaintiffs request will "govern every Plan participant" and "any reformation of the Plan would thus have to apply equally to all of them." Def. Br. at 15, n. 9. But if the Class is not certified Plaintiffs remain free to litigate their own claims for reformation. This would create the precise scenario contemplated by Rule 23(b)(1)(B) — "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Furthermore, conflicting

---

of that class, including one class representative, made money off the stock, while others, including another class representative, lost money. The existence of each class member's injury was different and different class members had different interests in establishing a different date on which EDS became imprudent. The district court certified a single class, and the Fifth Circuit remanded with instruction to "more fully consider the implications of the proven intraclass conflicts for the adequacy of representation by Smith and Mizell." *Id.* at 316. After remand, the District Court ***did*** certify a single class despite these alleged conflicts. *In re Electronic Data Systems Corp. "ERISA" Litig.*, 03-cv-126, Dkt. 334 (Aug. 6, 2008). That is true even though in *Langbecker* — unlike here — certain class members would gain while others lose from a given class start date.

9

decisions in multiple individual suits over the same issue could "establish incompatible standards of conduct for the party opposing the class," the predicate for certifying a class under Rule 23(b)(1)(A).[12]  And, the entire basis for the lawsuit is a Plan provision that applies to all members of the Class, and thus "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," satisfying Rule 23(b)(2).[13]

## Conclusion

For the reasons set forth herein, and in Plaintiffs' principal brief, Plaintiffs respectfully submit that the Class should be certified.

---

[12] There is no basis for Defendants' assertion that non-opt-out classes can only be certified where no Class Members would choose to "opt-out." The reason (b)(1) classes are certified is for this exact situation, where one Class Member who prefers one outcome and another who prefers a different outcome cannot both be accommodated if successful. *Humphrey v. United Way of Texas Gulf Coast*, No. H-05-0785, 2007 WL 2330933, at *9 (S.D. Tex. Aug. 14, 2007) (Finding (b)(1) certification appropriate where "Individual suits might lead to conflicting orders on the interpretation of the [] Plan and the resulting calculation of the [] benefits. Under this scenario, the plan would be administering the [] benefits using the "greater of" calculation for some beneficiaries and the "plus" calculation for others. This is precisely the type of incompatible conduct that Rule 23(b)(1)(A) aims to prevent".) *In re Enron Corp*, 2006 WL 1662596, at *15 (Certification under Rule 23(b)(1)(A) is warranted since ERISA plan participants "can only seek relief on behalf of the plan for breach of fiduciary duty, [and] if successful this action will impose obligations on defendants that are applicable to the plans.") *Alison v. Citgo Petroleum Corp*., 151 F.3d 402, 412 (5th Cir. 1998) ("The (b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike.").  Indeed, just this morning, the Eighth Circuit rejected a class member's objection to certification of a Rule 23(b)(1)(A) class in an ERISA case, finding that certification was proper because "the action was brought on behalf of the plan and requested plan-wide relief, raising the risk of inconsistent adjudications that would establish incompatible standards of conduct for defendants if individual actions were brought." *Schultz v. Huang,* No. 19-2158 (8th Cir. Jan. 31, 2020), Reply App. at APX032.

[13] Defendants' argument that injunctive relief would not be appropriate depends on their argument that plan reformation might ***harm*** some members of the class (Def. Br. at 14).  As discussed in detail in Section I.A, *supra,* the relief Plaintiffs seek cannot (as a matter of law), and will not (as a matter of fact), cause harm to any member of the class.

Dated:  January 31, 2020                         Respectfully submitted,

                                        */s/ Joe Kendall*
                                        JOE KENDALL
                                        Texas Bar. No. 11260700
                                        **KENDALL LAW GROUP, PLLC**
                                        3811 Turtle Creek Blvd., Suite 1450
                                        Dallas, Texas 75219
                                        (213) 744-3000 / (214) 744-3105 (Facsimile)
                                        jkendall@kendalllawgroup.com
                                        jgilmore@kendalllawgroup.com

                                        **IZARD, KINDALL & RAABE LLP**
                                        Robert A. Izard (admitted *pro hac vice*)
                                        Seth R. Klein (admitted *pro hac vice*)
                                        Mark P. Kindall (admitted *pro hac vice*)
                                        Douglas P. Needham (admitted *pro hac vice*)
                                        29 South Main Street, Suite 305
                                        West Hartford, CT 06107
                                        Tel: (860) 493-6292
                                        Fax: (860) 493-6290
                                        Email:  rizard@ikrlaw.com
                                        Email:  sklein@ikrlaw.com
                                        Email:  mkindall@ikrlaw.com
                                        Email:  dneedham@ikrlaw.com

                                        Gregory Y. Porter (to be admitted *pro hac vice*)
                                        Mark G. Boyko (to be admitted *pro hac vice*)
                                        **BAILEY & GLASSER LLP**
                                        1054 31st Street, NW, Suite 230
                                        Washington, DC 20007
                                        (202) 463-2101
                                        (202) 463-2103 fax
                                        gporter@baileyglasser.com
                                        mboyko@baileyglasser.com

                                        ***Counsel for Plaintiffs***

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on all counsel of record on January 31, 2020, via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

*/s/ Joe Kendall*
JOE KENDALL

12